**Reversed and Rendered in Part, Reversed and Remanded in Part, and Opinion filed April 17, 2012.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-00404-CV

---

## TED LAZARIDES,[1] IN HIS OFFICIAL CAPACITY, Appellant

### V.

## GRADY FARRIS, Appellee

---

**On Appeal from the 80th District Court
Harris County, Texas
Trial Court Cause No. 2009-46543**

---

## O P I N I O N

In this groundwater diversion case, appellant Ted Lazarides appeals the trial court's denial of a motion for summary judgment in which he asserted various challenges

---

[1] The City of Hilshire Village notified this court that Lazarides passed away on July 6, 2011, and requested that Joe Garrett be substituted for Lazarides as the appellant. However, the Texas Rules of Appellate Procedure provide that if a party dies after judgment but before our appeal is disposed, "the appellate court will proceed to adjudicate the appeal as if all parties were alive. The appellate court's judgment will have the same force and effect as if rendered when all parties were living. The decedent party's name may be used on all papers." *See* Tex. R. App. P. 7.1(a).

to the trial court's subject-matter jurisdiction. In seven issues,[2] Lazarides contends the trial court erred by refusing to dismiss appellee Grady Farris's claims against Lazarides for conduct in his official capacity. We hold that the trial court should have granted summary judgment based on lack of jurisdiction as to all of the claims, except Farris's claims for prospective declaratory and injunctive relief regarding Lazarides's alleged *ultra vires* acts. Farris has attempted to allege claims for prospective declaratory and injunctive relief based upon Lazarides's alleged *ultra vires* acts, but has not properly pleaded those claims or stated facts sufficient to demonstrate that those claims are ripe or not moot. Therefore, we reverse and remand those claims to the trial court to allow Farris an opportunity to cure the pleading defects as to his *ultra vires* claims. With regard to the remaining official capacity claims against Lazarides, we reverse and render judgment dismissing those claims for lack of subject-matter jurisdiction.

### *Factual Background*

Farris resides in the City of Hilshire Village, south of his next door neighbor Sharon Fink.[3] Fink built a new home in 2007, landscaped her property, and installed a swimming pool, all of which Farris claims illegally diverted the flow of water from his property. Before Fink made these changes to her property, surface water accumulated from heavy rain drained from Farris's backyard by flowing across the property line Farris shared with Fink into a trench that directed water into the Spring Branch Creek drainage watershed. Farris asserts that Fink obstructed the natural drainage by piling pool dirt along the common property line between the two lots and along the back of her property, and by adding perimeter fencing, plants, concrete structures, and other materials at and near the boundaries of her property.

---

[2] Lazarides argues that: 1) appellee Grady Farris's claim for a declaratory judgment concerning the legality of the City's past applications of its drainage guidelines is moot; 2) the trial court lacks jurisdiction over Farris's official capacity claims because Farris failed to exhaust administrative remedies; 3) Farris lacks standing to challenge the City's future application of its drainage guidelines; 4) Farris's claim for prospective relief is not yet ripe; 5) Farris has failed to properly plead an *ultra vires* claim; 6) Farris's claims for money damages are barred by governmental immunity; and 7) Farris's claims are barred by the election of remedies provision in Texas Civil Practice & Remedies Code § 101.106(b).

[3] Fink is a defendant in the underlying case but not a party to this appeal.

Fink was required to obtain permits from the City before making these alterations on her property. A certificate of occupancy also was required before she would be allowed to move into her new home. Before permits were to be issued, Fink also was required to submit drainage and building plans to the City that complied with building codes and zoning regulations. The consulting engineers for the City approved an initial drainage plan for Fink's property in 2005 that specified, in compliance with the City's zoning regulations, that "final grading shall be such that this property shall not drain on adjacent properties and existing drainages on adjacent properties is not altered." Farris alleges that the original drainage plan was rendered moot because of changes to Fink's building and landscaping plans, including the addition of a pool, an eight-foot fence, and dense shrubs and trees.

Farris alleges his property flooded in 2007 because of the combination of heavy rain and alterations on Fink's property, causing damage to Farris's property. After this incident, Farris wrote Lazarides,[4] the City's building official, concerned that the alterations on Fink's property interfered with the preexisting drainage pattern on Farris's property. Lazarides replied that he would ensure Fink's drainage system would accommodate Farris's runoff to the south and Lazarides would not issue a certificate of occupancy until that goal had been accomplished. Lazarides subsequently issued a certificate of occupancy to Fink. Farris claims that Lazarides prevented restoration of the former drainage pattern off his property by following a "back to front drainage rule" contained in the City's drainage criteria and guidelines.

Farris contends that the back-to-front drainage rule conflicts with the City's zoning regulation that requires a property owner to maintain the drainage of her property without adversely affecting the existing drainage pattern of adjacent properties. Specifically, Farris states that Lazarides told him if he made significant changes to or remodeled his property to repair the damages previously caused by flooding, he would be required to direct drainage from his property to the west (the front of Farris's property)

_____

[4] Except where otherwise noted, Lazarides is referred to in his official capacity.

3

instead of to the south where it previously flowed over the property line between Farris's and Fink's properties. Farris contends that the City, through its building official, favors "redirecting existing drainage to comply with a non-ordinance over enforcing the protections of existing drainage contained in [the City's zoning regulations]."

## *Procedural History*

Farris and his wife originally sued Lazarides in his individual capacity, Fink, and others, including Robin Border, the mayor of Hilshire Village.[5] Farris supplemented his petition twice and, with his second supplemental petition (the live petition), added Lazarides as a defendant in his official capacity. The trial court granted summary judgment dismissing the claims against the mayor and against Lazarides in his individual capacity. Regarding the claims against him in his official capacity, Lazarides sought dismissal of these claims for lack of subject matter jurisdiction by both a plea to the jurisdiction and by a motion for summary judgment. The trial judge denied Lazarides's motion for summary judgment and did not rule on his plea to the jurisdiction. Farris asked the trial court to non-suit other defendants, which was confirmed. Accordingly, when this appeal was filed, Fink and Lazarides in his official capacity were the only remaining defendants in the suit.

In his second supplemental petition, Farris does not differentiate which of his claims were brought against Lazarides in his individual capacity or official capacity; therefore, notwithstanding the trial court's dismissal of claims against Lazarides individually, it is unclear from the record what official capacity claims remain. Farris asserted claims against Lazarides for "violation of the Restatement of Torts," negligence per se, and violations of the Texas Water Code. Farris seeks (1) a declaration that Lazarides violated his duty to enforce the City's zoning regulations by (a) maintaining the drainage of Fink's property in a manner that adversely affects the drainage pattern on Farris's property, (b) causing overflow of water due to his failure to adequately

---

[5] Farris's wife later non-suited all of her claims.

4

accommodate new or changed drainage patterns, and (c) failing to require a drainage engineer to supply a drainage plan in compliance with the zoning ordinance; (2) a declaration that Lazarides exceeded his authority by enforcing compliance with the back-to-front drainage rule; (3) a mandatory injunction ordering Lazarides to refrain from requiring compliance with the back-to-front drainage rule; (4) a mandatory injunction requiring Lazarides to perform his alleged ministerial duty of enforcing "Hillshire Village Zoning Ordinance 11:01.07" (hereinafter the "Ordinance"); (5) actual damages; (6) exemplary damages; and (7) attorney's fees and costs.

Lazarides in his official capacity filed a plea to the jurisdiction and motion for summary judgment. He moved for summary judgment on traditional and no-evidence grounds. Farris did not respond. Though the trial court did not rule on the plea to the jurisdiction, the court denied summary judgment, which included grounds challenging the trial court's subject matter jurisdiction. Lazarides filed this interlocutory appeal, seeking reversal of the trial court's denial of summary judgment and dismissal of the claims against him for want of subject-matter jurisdiction.

### *Discussion*

In his petition, Farris alleged claims against Lazarides in his official capacity, including claims for declaratory relief, a prospective injunction, and damages. We address whether Farris exhausted administrative remedies prerequisite to challenging Lazarides's past decisions, whether any claims for declaratory relief are moot, and whether Farris is entitled to damages as part of his official capacity claims against Lazarides. We also determine whether Farris has properly pleaded *ultra vires* claims and whether the trial court lacks jurisdiction over any such claims due to lack of standing, lack of ripeness, or immunity under Texas Civil Practice and Remedies Code section 101.106(b).

5

### 1. *Jurisdiction over Interlocutory Appeal*

Only the denial of the jurisdictional challenges contained in Lazarides's motion for summary judgment are at issue in this appeal.[6] We have jurisdiction to hear interlocutory appeals only as authorized by statute. *Baylor Coll. of Med. v. Hernandez*, 208 S.W.3d 4, 7 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). Even when the parties do not challenge appellate jurisdiction, we must inquire into our jurisdiction to consider an appeal. *Id.*

Lazarides brings this appeal under section 51.014(a)(8), which provides for interlocutory appeals from the grant or denial of a plea to the jurisdiction filed by a governmental unit. Tex. Civ. Prac. & Rem. Code § 51.014(a)(8). Here, the trial court did not expressly grant or deny Lazarides's plea to the jurisdiction, but it denied a summary-judgment motion in which Lazarides asserted various jurisdictional challenges. When the record does not contain an order granting or denying a plea to the jurisdiction, but does include an order denying a motion for summary judgment in which the movant challenged the trial court's jurisdiction, an interlocutory appeal may be taken under subsection (a)(8) irrespective of the selected procedural vehicle. *Thomas v. Long*, 207 S.W.3d 334, 339 (Tex. 2006). A state official, such as Lazarides, who was sued in his official capacity may rely on subsection (a)(8) to file an interlocutory appeal because a suit against a state official in his official capacity is not a suit against the official personally; the real party in interest is the governmental entity. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 844–45 (Tex. 2007). Accordingly, we have jurisdiction to review the trial court's order to the extent that it denied summary judgment as to grounds in which Lazarides challenged the trial court's subject matter jurisdiction.[7]

---

[6] As set forth above, the claims against Lazarides in his individual capacity were dismissed by the trial court's entry of summary judgment.

[7] Farris also has alleged *ultra vires* claims against Lazarides, which, although alleged against Lazarides in his official capacity, would not be a suit against the governmental entity. *Franka v. Velasquez*, 332 S.W.3d 367, 382 (Tex. 2011) ("Under Texas law, a suit against a government employee in his official capacity is a suit against his government employer with one exception: an action alleging that the employee acted *ultra vires*.").

6

## 2. *Standard of Review*

The jurisdictional challenges in Lazarides's summary-judgment motion raise a question of law reviewed de novo on appeal. *See Long*, 207 S.W.3d at 339–40; *City of Houston v. Petroleum Traders Corp.*, 261 S.W.3d 350, 354 (Tex. App.—Houston [14th Dist.] 2008, no pet.) This court may only review summary-judgment grounds that would deprive the trial court of subject matter jurisdiction. *See Long*, 207 S.W.3d at 339–40; *Robinson v. Alief Indep. Sch. Dist.*, 298 S.W.3d 321, 324 (Tex. App.—Houston [14th Dist.] 2009, pet. denied); *Hernandez*, 208 S.W.3d at 7–8.

A summary-judgment motion challenging jurisdiction may challenge either the pleadings or the existence of jurisdictional facts. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004). When such a motion challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties to resolve the jurisdictional issues raised, as the trial court is required to do. *See id.* at 227. If a fact question is presented by the evidence regarding a jurisdictional issue, then the trial court is precluded from granting summary judgment on the jurisdictional challenge, and fact issues will be resolved by the fact-finder. *Id.* at 227–28. However, if the relevant evidence is undisputed or fails to raise a genuine fact issue regarding the jurisdictional challenge, the trial court grants summary judgment as a matter of law. *Id.* at 228.

When a party has filed a summary-judgment motion raising jurisdictional issues that challenge the pleadings only, a reviewing court must construe the pleadings liberally in favor of the pleader and look to the pleader's intent. *See Long*, 207 S.W.3d at 339–40; *Miranda*, 133 S.W.3d at 226. If the facts alleged affirmatively demonstrate the trial court's jurisdiction to hear the cause, the trial court should reject the jurisdictional challenge. *See Miranda*, 133 S.W.3d at 226. If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction, but do not affirmatively demonstrate incurable defects in the jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *Id.* at 226–27. If the

7

pleadings affirmatively negate the existence of jurisdiction, then summary-judgment may be granted on the jurisdictional challenge without allowing an opportunity to amend. *Id.* at 227.

### 3. *Failure to Exhaust Administrative Remedies*

In his second issue, Lazarides argues that the trial court lacks jurisdiction over Farris's official capacity claims because Farris failed to appeal to the City's Board of Adjustment any of Lazarides's decisions regarding the alterations to Fink's property. Exhaustion of administrative remedies is not required for *ultra vires* claims, and we do not address Farris's attempt to plead *ultra vires* claims in the following discussion of administrative remedies. *See Appraisal Review Bd. v. O'Connor & Assocs.*, 267 S.W.3d 413, 419 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Municipalities are authorized to promulgate zoning regulations and establish boards of adjustment that "hear and decide an appeal that alleges error in an order, requirement, decision, or determination made by an administrative official in the enforcement of [zoning regulations]." Tex. Loc. Gov't Code §§ 211.003; 211.008; 211.009(a)(1). Any person aggrieved by the decision of an administrative official may appeal to the board of adjustment. *Id*. § 211.010(a)(1). The appeal must be filed within a reasonable time as determined by the board's rules. *Id*. § 211.010(b). The aggrieved person may appeal the decision of the board of adjustment by filing, within ten days of the board's decision, a verified petition in a district court, county court, or county court at law stating that the board's decision "is illegal in whole or in part." *Id*. § 211.011(a)(1), (b). It is undisputed that Farris did not appeal to the Board.

Administrative remedies available under section 211 of the Local Government Code generally must be exhausted before a party may seek judicial review of a determination made by an administrative official. *See, e.g.*, *City of San Antonio v. El Dorado Amusement Co.*, 195 S.W.3d 238, 250 (Tex. App.—San Antonio 2006, pet. denied) ("Because El Dorado did not exhaust its administrative remedies, the trial court lacked jurisdiction to determine the propriety of the adjustment board's denial of the non-

conforming use permit."); *Winn v. City of Irving*, 770 S.W.2d 10, 11 (Tex. App.—Dallas 1989, no writ) ("It is settled that the administrative remedies provided by Local Government Code section 211.009–.010 . . . must be exhausted before matters regarding nonconforming uses may be brought before the courts."). The requirement of administrative exhaustion compels a party to "pursue all available remedies within the administrative process before seeking judicial relief." *Larry Koch, Inc. v. Tex. Natural Res. Conservation Comm'n*, 52 S.W.3d 833, 839 (Tex. App.—Austin 2001, pet. denied). The failure to comply with this requirement before seeking judicial review deprives a court of jurisdiction to decide the case. *Id.* (citing *Lindsay v. Sterling*, 690 S.W.2d 560, 563 (Tex. 1985)); *see also* Tex. Gov't Code § 311.034 ("Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity.").

The City promulgates zoning regulations through the City Council, along with rules to enforce the regulations. Both the regulation and the guidelines at issue were promulgated in this manner.[8] The zoning regulations specify that an appeal to the Board of Adjustment may be filed "by any person aggrieved . . . by any decision of the Building Official." The Board rules require an appeal to be filed "within 45 days from the . . . date of order, ruling, decision or determination of the Building Inspector." Decisions of the Board are reviewable on petition presented to a Harris County District Court.

**Notice**. During oral argument, Farris's counsel argued that Farris did not receive notice of Lazarides's decisions, he had no standing to appeal to the Board, and he had no obligation to appeal because he was not the homeowner who sought the building permits and certificate of occupancy. As pled in the live petition in this case, Farris corresponded with Lazarides after Farris's property flooded in July 2007, complaining that the

---

[8] The zoning regulation at issue was adopted on June 16, 1998. The City subsequently hired Claunch & Miller, a local engineering firm, to draft drainage guidelines, which contain the purported "back-to-front drainage rule," with input from the mayor, Lazarides, and the City Council. The drainage guidelines at issue became effective July 25, 2006, and have been revised several times. The newest version of the guidelines was approved by the Hilshire Village City Council on June 21, 2011.

placement of dirt on Fink's property did not comply with Fink's approved drainage plan in accordance with the previously issued building permits. Lazarides responded in August 2007, "I will ensure that the designed drainage system will accommodate your runoff to the South. I will not issue a certificate of occupancy until this is done." Subsequently, Lazarides announced at the December 18, 2007 City Council meeting, "A certificate [of occupancy] should be issued in December for [the] Fink residence at 1134 Glourie. There was a drainage problem that appears to be resolved." Not only was this meeting open to the public, but we take judicial notice that the minutes are publicly available on the City's website. *See Langdale v. Villamil*, 813 S.W.2d 187, 190 (Tex. App.—Houston [14th Dist.] 1991, no writ) (acknowledging that courts may take judicial notice of matters of public record, whether requested by a party or on their own, for the first time on appeal) (citing Tex. R. Evid. 201(c), (f)); *see also* The City of Hilshire Village, http://hilshirevillagetexas.com/Government/Minutes/2007/Dec18.2007.html (last visited April 11, 2012). The certificate of occupancy was issued on December 19, 2007.

We hold, under these circumstances, that Farris had notice of Lazarides's decision to issue the certificate of occupancy to Fink by December 19, 2007. Farris certainly knew about flooding problems on his property during July 2007 when he complained to Lazarides that Fink had not complied with her approved drainage plan that was submitted to the City before building permits were issued. Lazarides responded with a status report to Farris regarding whether a certificate of occupancy would be issued. Farris, moreover, had several options to obtain information regarding the status of the certificate of occupancy: as demonstrated from his previous letter to Lazarides, Farris knew how to contact Lazarides to obtain a status regarding the property, or Farris could have attended the public meeting where this issue was addressed[9] or obtained the meeting minutes from the City that were publicly available. *See Little v. Smith*, 943 S.W.2d 414, 421 (Tex. 1997) ("Constructive notice is usually applied when a person knows where to find the relevant information but failed to seek it out."); *Mooney v. Harlin*, 622 S.W.2d 83, 85

---

[9] It is unclear from the record whether Farris actually attended the meeting.

(Tex. 1981) ("A person is charged with constructive notice of the actual knowledge that could have been acquired by examining public records."). Farris, accordingly, had actual or constructive notice regarding the status of the certificate of occupancy by December 19, 2007, when the certificate of occupancy was issued following the City Council meeting held the day before.

**Standing**. Farris had standing to appeal Lazarides's decisions to the Board as a "person aggrieved," *see* Texas Local Government Code § 211.010(a), because he alleged injury to his own property and not just a generalized grievance as a member of the public. *See, e.g.*, *Galveston Historical Found. v. Zoning Bd. of Adjustment*, 17 S.W.3d 414, 418 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (holding, under section 211.010(a), persons residing within zoned area have standing to challenge zoning decisions affecting that area); *Texans to Save the Capitol, Inc. v. Bd. of Adjustment*, 647 S.W.2d 773, 775 (Tex. App.—Austin 1983, writ ref'd n.r.e.) (aggrieved parties had standing under former version of section 211.010(a) to appeal to board of adjustment when evidence offered showed some unique harm done to them). Also, there is no requirement that only the homeowner seeking permits is allowed to appeal the building official's decisions regarding those permits—the only requirement in the Board rules is that the person who files the appeal must own property affected by the decisions.[10] We conclude Farris's arguments regarding his failure to appeal to the Board are without merit.

The summary judgment evidence presented by Lazarides affirmatively demonstrates that no appeal was filed with the Board. Moreover, the undisputed evidence shows that Farris had either actual or constructive notice that the certificate of occupancy was issued. Farris thus was required to exhaust his administrative remedies by appealing Lazarides's decisions to the Board within 45 days after Lazarides issued the

---

[10] An appeal is made by application to the Board. The Board rules require the owner of property involved in an application to join in the application. We do not read this rule as having precluded Farris from filing an application, as his complaint is that *his property* was affected by Lazarides's decisions to issue building permits and the certificate of occupancy to Fink. Farris, moreover, could have appealed to a Harris County District Court any decision by the Board that he was not authorized to appeal Lazarides's decisions.

11

certificate of occupancy. The trial court erred by denying Lazarides's motion because it did not have subject-matter jurisdiction over Farris's non-*ultra vires* claims.[11] Accordingly, we hold that with the exception of Farris's *ultra vires* claims, Farris's failure to exhaust administrative remedies deprived the trial court of subject-matter jurisdiction over Farris's official capacity claims. *See Larry Koch, Inc.*, 52 S.W.3d at 839.

We sustain Lazarides's second issue.

## 4. *Ultra Vires Claims*

Farris has attempted to plead *ultra vires* claims against Lazarides in his official capacity. An *ultra vires* action is one in which the plaintiff seeks relief in an official-capacity suit against a government actor who allegedly has violated statutory or constitutional provisions by acting without legal authority or by failing to perform a purely ministerial act. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–73 (Tex. 2009). Under *Heinrich,* governmental immunity does not bar such *ultra vires* claims, but the only remedies available to a successful plaintiff are prospective declaratory and injunctive relief. *Id.* at 376, 380.

In his live pleadings, Farris asserts a claim for prospective declaratory and injunctive relief against Lazarides in his official capacity based on his alleged violation of the City's Municipal Code and his alleged failure to perform purely ministerial acts. Farris has requested both: (1) a declaratory judgment that the back-to-front drainage rule violates the Ordinance as well as Texas Water Code § 11.086, and (2) a prospective injunction prohibiting Lazarides from enforcing or applying the back-to-front drainage

---

[11] We note, moreover, that even if Farris had exhausted administrative remedies, his official capacity claims regarding retrospective declaratory relief against Lazarides are moot. Farris sought a declaratory judgment that Lazarides acted without legal authority by enforcing the unofficial back-to-front drainage rule. The Texas Supreme Court has held that a claim for declaratory relief is moot if the party is no longer subject to the alleged illegal conduct. *See Williams v. Lara*, 52 S.W.3d 171, 184–85 (Tex. 2001). Because Farris is no longer subject to any purported illegal conduct regarding his complaints pertaining to Lazarides's past decisions, his claims for a declaration against Lazarides's past actions are moot. *Id*.

rule in the future and requiring Lazarides to perform his alleged ministerial duty of enforcing the Ordinance.

Before we address whether Farris has properly pleaded any *ultra vires* claims—or could properly plead such claims if given the opportunity to replead—we must first determine whether such claims are barred by mootness, lack of standing, or lack of ripeness.

### a. *Standing, Ripeness, and Mootness*

In his third and fourth issues, Lazarides contends that Farris lacks standing to challenge the City's future application of its drainage guidelines and that Farris's purported *ultra vires* claims are not yet ripe.

Standing is implicit in the concept of subject-matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Standing focuses on the question of who may bring an action. *Patterson v. Planned Parenthood of Houston and Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998). Standing cannot be waived and may be raised for the first time on appeal by the parties or by the court. *Tex. Ass'n of Bus.*, 852 S.W.2d at 445. The general test for standing is whether (1) there is a real controversy between the parties, (2) which will actually be determined by the judicial declaration sought. *Id.* at 446. As a general rule, to have standing an individual must demonstrate a particularized interest in a conflict distinct from that sustained by the public at large. *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 307 (Tex. 2007).

Farris has requested both: (1) a declaratory judgment that Lazarides acted without legal authority by enforcing the back-to-front drainage rule, failed to perform a ministerial act by not enforcing the Ordinance, and that the back-to-front drainage rule violates the Ordinance as well as Texas Water Code § 11.086, and (2) a prospective injunction prohibiting Lazarides from enforcing or applying the back-to-front drainage rule in the future and requiring Lazarides to enforce the Ordinance. We address only these purported *ultra vires* claims because we have already disposed of all other claims

by Farris against Lazarides in his official capacity.

Farris has alleged that Lazarides informed him in a letter that if Farris made significant changes or new additions to his property, Farris would be required to comply with the back-to-front drainage rule. This statement by Lazarides arguably gives Farris standing to bring a claim for prospective relief. If Farris were to make substantial changes to his property, then Farris would have "a particularized interest in a conflict distinct from that sustained by the public at large" and an injunction would prevent the City from enforcing the back-to-front drainage rule against Farris. *See Lomas*, 223 S.W.3d at 307. In addition, Farris also alleges in his live pleading that he has experienced drainage problems as a result of Lazarides's failure to perform the ministerial duty of enforcing the Ordinance. However, as pleaded, Farris does not affirmatively demonstrate a justiciable controversy, as discussed below.

Ripeness also is a threshold issue that implicates subject-matter jurisdiction. *Robinson v. Parker*, 353 S.W.3d 753, 755 (Tex. 2011). While standing focuses on who may bring an action, ripeness examines when an action may be brought. *Patterson*, 971 S.W.3d at 442. The ripeness inquiry focuses on whether the case involves uncertain or contingent future events that may not occur as anticipated, or may not occur at all. *Robinson*, 353 S.W.3d at 755–56; *Hirschfeld Steel Co. v. Kellogg Brown & Root, Inc.*, 201 S.W.3d 272, 278 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Although a claim is not required to be ripe at the time of filing, if a party cannot demonstrate a reasonable likelihood that the claim will soon ripen, the case must be dismissed. *Robinson*, 353 S.W.3d at 755. "[T]he essence of the ripeness doctrine is to avoid premature adjudication . . . [and] to hold otherwise would be the essence of an advisory opinion, advising what the law would be on a hypothetical set of facts." *Id.* at 756 (quoting *Patterson*, 971 S.W.2d at 444) (second alteration in original).

Farris cites *Heinrich* in support of his claim for prospective injunctive relief as to his alleged *ultra vires* claims. 284 S.W.3d 366. However, the prospective injunction that Farris seeks is distinguishable from that requested in *Heinrich*. In *Heinrich*, the

requested prospective declaratory and injunctive relief involved a widow's claims over pension benefit payments. *Id.* at 369. The widow in that case had been receiving monthly pension benefit payments, but the pension fund reduced her payments by one-third when her son turned 23. *Id.* The widow brought *ultra vires* claims against the board members in their official capacities, and sought declaratory and injunctive relief reinstating full pension benefit payments. *Id.* at 369–70. The monthly pension benefit payments were recurring and certain, and the widow only sought to have them increased to their original amount. The prospective injunctive relief sought in *Heinrich* was not based on events that were speculative or contingent. Accordingly, although it was not directly addressed by the *Heinrich* court, the relief sought in that case would not have been barred by a lack of ripeness.

In the present case, Farris has not claimed that he actually made significant changes or additions to his property and was forced to comply with the back-to-front drainage rule. Nor has Farris argued that he plans to undertake such changes. Farris does allege in his live pleading that he has experienced drainage problems as a result of Lazarides's failure to perform the ministerial duty of enforcing the Ordinance. The summary-judgment evidence does not conclusively prove that the trial court lacks jurisdiction over Farris's purported *ultra vires* claims due to a lack of ripeness. Nonetheless, as pleaded, Farris's claims for prospective injunctive relief do not affirmatively demonstrate ripeness. *See, e.g.*, *Scarbrough v. Metro. Transit Auth. of Harris Cnty.*, 326 S.W.3d 324, 337–38 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (where no evidence at the time of trial that METRO's proposed construction would occur on any part of Scarbrough's property or that she would be denied access to or restricted in the use of her property, the likelihood of injury to her depended on factors too speculative to address, and such claims were therefore not ripe for decision).

As to Farris's request for a declaration that the back-to-front drainage rule violates the Texas Water Code and the Ordinance, Lazarides argues that the Hilshire Village City Council approved drainage guidelines on June 21, 2011, that affirmatively prohibit Water

15

Code violations, allow individualized permitting determinations on a case-by-case basis, and provide for drainage to the street, ditch, or storm sewer system—which on most lots equates to back-to-front drainage.[12]   Therefore, Lazarides argues that the Ordinance cannot now be construed to conflict with the Texas Water Code, and the City has approved of a back-to-front drainage rule.   Though the summary-judgment evidence did not conclusively prove that the trial court lacks jurisdiction over Lazarides's purported *ultra vires* acts due to mootness, Farris's current pleadings do not affirmatively demonstrate that these claims are not moot.[13]   The mootness doctrine precludes a court from rendering an advisory opinion in a case where no live controversy exists.   *Alief Indep. Sch. Dist.*, 298 S.W.3d at 324.   A declaratory judgment is appropriate when a justiciable controversy exists concerning the rights and status of the parties and the controversy will be resolved by the declaration sought.   *Id.*

### b.   *Failure to Properly Plead Ultra Vires Claims*

In his fifth issue, Lazarides contends that Farris failed to properly state any *ultra vires* claims.   In his live pleadings, Farris attempted to allege claims for prospective declaratory and injunctive relief based upon Lazarides's alleged *ultra vires* acts, but Farris did not properly plead these claims.   Farris asserts a claim for injunctive relief against Lazarides in his official capacity based on his alleged violation of the City's Municipal Code and his alleged failure to perform purely ministerial acts.   Farris seeks an injunction requiring Lazarides to enforce the Ordinance that requires a property owner to maintain the drainage of her property without adversely affecting the existing drainage

---

[12] The July 25, 2006 and July 24, 2009 City of Hilshire Village Drainage Guidelines are found in the record.   However, the most recent June 21, 2011 guidelines are not in the record, as they were passed during the pendency of this appeal.   Lazarides has asked this court in his reply brief to take judicial notice of the newest guidelines.   *See* Tex. R. Evid. 204 (allowing courts—either upon motion of a party or *sua sponte*—to take judicial notice of the ordinances of a municipality).

[13] Though the mootness of the requested declaration was not alleged by Lazarides, this court nonetheless must determine whether jurisdiction is proper.   *See Tex. Dep't of Transp. v. Olivares*, 316 S.W.3d 89, 104 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *Gantt v. Gantt*, 208 S.W.3d 27, 29–30 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) ("Subject matter jurisdiction is never presumed . . . [and] [e]ven if not raised, issues affecting jurisdiction must be reviewed *sua sponte*.").

16

pattern of adjacent properties.  However, to obtain a permanent injunction, Farris must plead and prove, among other things, the existence of imminent harm, the existence of irreparable injury, and the absence of an adequate remedy at law.  Farris has not pleaded these elements.

The summary-judgment evidence did not conclusively prove that the trial court lacks jurisdiction over Lazarides's purported *ultra vires* claims.  When a defendant challenges the plaintiff's pleadings on jurisdictional grounds, the court's determination turns on whether the pleader has alleged facts sufficient to affirmatively demonstrate the court's jurisdiction to hear the cause.  *See Miranda*, 133 S.W.3d at 226.  In making this determination, courts should glean the pleader's intent and construe the pleadings liberally in favor of jurisdiction.  *Id.*  If the pleadings do not contain facts sufficient to affirmatively demonstrate the trial court's jurisdiction, but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and plaintiffs should be afforded an opportunity to amend.  *Id.* at 226–27.  If the pleadings affirmatively negate jurisdiction, the claims may be dismissed without allowing plaintiffs an opportunity to amend.  *Id.* at 227.  The opportunity to amend pleadings that are insufficient to establish, but do not affirmatively negate, jurisdiction arises after a court determines the pleadings are insufficient.  *Koseoglu*, 233 S.W.3d at 839–40; *Tex. Dep't of Transp. v. Olivares*, 316 S.W.3d 89, 95–96 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

### c.  *Opportunity to Re-plead*

Liberally construing the live pleadings in Farris's favor, the pleadings do not contain facts sufficient to affirmatively demonstrate the trial court's jurisdiction over the *ultra vires* claims, but neither do they affirmatively demonstrate incurable defects in jurisdiction.  The trial court ruled in Farris's favor, so Farris had no occasion in the trial court to ask for an opportunity to amend his pleadings to cure any defect.  In this situation, the proper course of action is to reverse the trial court's order as to Farris's *ultra vires* claims and remand with instructions for the trial court to give Farris a

reasonable opportunity to amend his pleadings in an attempt to properly plead these claims and to plead facts showing ripeness and lack of mootness. *See Olivares*, 316 S.W.3d at 95, 99. Therefore, Farris should be given an opportunity to re-plead. *See Koseoglu*, 233 S.W.3d at 839. Without expressing any opinion as to the merits of any such claims, we reverse the trial court's order as to Farris's *ultra vires* claims, and we remand with instruction for the trial court to provide Farris a reasonable opportunity to amend his pleadings. *See Olivares*, 316 S.W.3d at 95, 99.

### d. *Election of Remedies under Section 101.106*

In his seventh issue, Lazarides contends that Farris's claims are barred by the election of remedies statute. Tex. Civ. Prac. & Rem. Code § 101.106. Lazarides claims that, because Farris elected to sue Lazarides in his individual capacity first, Farris cannot now sue Lazarides in his official capacity. Specifically, Lazarides argues that section 101.106(b) bars the suit. Section 101.106(b) reads:

> The filing of a suit against any employee of a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against the governmental unit regarding the same subject matter unless the governmental unit consents.

*Id.* § 101.106(b).

The argument that Lazarides appears to be making is that section 101.106(b) bars suit against a governmental unit if suit is filed against a governmental employee *in either his individual or official capacity*. There is case law to support that conclusion. *See, e.g.*, *Waxahachie Indep. Sch. Dist. v. Johnson*, 181 S.W.3d 781, 787 (Tex. App.—Waco 2005, pet. denied) ("Accordingly, we agree with WISD that under section 101.106(b) whether the Defendant Employees were sued in their official or individual capacities is irrelevant.").

Lazarides seems to contend that the amended suit against Lazarides in his official capacity is really a suit against the governmental unit itself. Therefore, he argues, the original pleadings against Lazarides in his individual capacity would have barred the later

18

pleadings against him in his official capacity because of the irrevocable election in 101.106(b). *See, e.g.*, *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008) ("But it is equally true that by forcing plaintiffs to make an irrevocable election at the time suit is filed, the Legislature intended to reduce the delay and expense associated with allowing plaintiffs to plead alternatively that the governmental unit is liable because its employee acted within the scope of his or her authority but, if not, that the employee acted independently and is individually liable.").

However, because Farris is alleging *ultra vires* claims, the suit would not be barred under section 101.106(b). The Supreme Court of Texas has stated that "[u]nder Texas law, a suit against a government employee in his official capacity is a suit against his government employer with one exception: an action alleging that the employee acted *ultra vires*." *Franka v. Velasquez*, 332 S.W.3d 367, 382 (Tex. 2011); *see also Heinrich*, 284 S.W.3d at 372–73 ("Nonetheless, as a technical matter, the governmental entities themselves—as opposed to their officers in their official capacity—remain immune from suit. . . . [I]t follows that these suits cannot be brought against the state, which retains immunity, but must be brought against the state actors in their official capacity."). Therefore, when *ultra vires* claims have been alleged, the claim is not against the governmental unit, and the irrevocable election in 101.106(b) does not bar the suit against the state actor in his or her official capacity. Accordingly, we overrule Lazarides's seventh issue.

### 5. *Governmental Immunity From Damages Claims*

In his sixth issue, Lazarides argues that governmental immunity bars Farris's damages claims against him. Farris asserts that this issue is "not relevant to denial of the Motion." In reply, Lazarides asserts that Farris, by his response, disavowed this claim. On this record and based upon the statements of Farris's counsel at oral argument, it is unclear whether Farris still seeks damages against Lazarides in his official capacity. We, accordingly, address this issue.

19

The Texas Supreme Court has limited the remedies for *ultra vires* claims against state officials to prospective declaratory and injunctive relief. *Heinrich*, 284 S.W.3d at 376, 380. While compliance with a prospective injunction may sometimes involve expenditure of money by the state, a claimant is not entitled to retrospective monetary damages because they are barred by governmental immunity. *Id.* at 374–76. Farris's live petition seeks damages that Farris sustained from the flooding on his property and exemplary damages. We hold that these claims are barred by governmental immunity.[14]

Accordingly, we sustain Lazarides's sixth issue.

### *Conclusion*

Except as to any claims for prospective declaratory and injunctive relief based upon Lazarides's alleged *ultra vires* acts, we conclude the trial court did not have subject-matter jurisdiction over Farris's official capacity claims, and consequently, the trial court erred by denying summary judgment. Farris's pleadings do not contain facts sufficient to affirmatively demonstrate the trial court's jurisdiction over the claims for prospective declaratory and injunctive relief based upon Lazarides's alleged *ultra vires* acts, but the pleadings do not affirmatively demonstrate incurable defects in jurisdiction. Therefore, we reverse the trial court's order as to Farris's *ultra vires* claims and remand with instructions for the trial court to give Farris a reasonable opportunity to amend his pleadings in an attempt to properly plead these claims. We expressly reserve any opinion on the merit of those claims. With regard to the remaining official capacity claims against Lazarides, we reverse and render judgment dismissing those claims for lack of subject-matter jurisdiction.

/s/     Martha Hill Jamison
           Justice

Panel consists of Justices Frost, Seymore, and Jamison.

---

[14] *See Miranda*, 133 S.W.3d at 225–26 ("Sovereign immunity from suit defeats a trial court's subject matter jurisdiction . . . .").