

| GLENN HEGAR, COMPTROLLER OF PUBLIC ACCOUNTS OF THE STATE OF TEXAS and KEN PAXTON, ATTORNEY GENERAL OF THE STATE OF TEXAS, | § § § § | No. 08-20-00229-CV |
|---|---|---|
| Appellants, | § | Appeal from the |
| v. | § | 353rd District Court |
| SPACE CITY MANAGEMENT, L.L.C., | § § | Of Travis County, Texas |
| Appellee. | § | (D-1-GN-19-005242) |

## **O P I N I O N**

Appellants, Glenn Hegar, Texas Comptroller of Public Accounts of the State of Texas and Ken Paxton, Attorney General of the State of Texas (collectively, "Appellants"), appeal the trial court's partial denial of its plea to the jurisdiction.[1] Appellee, Space City Management, L.L.C. (d/b/a "Colette"), maintain constitutional challenges as applied to Section 102.051 of the Texas Business and Commerce Code and Section 3.722 of the Texas Administrative Code, and to the investigative tactics of Appellants. TEX.BUS.&COM.CODE ANN. § 102.051; 34 TEX.ADMIN.CODE ANN. § 3.722.

---

[1] This case was transferred from the Austin Court of Appeals pursuant to the Texas Supreme Court's docket equalization efforts. *See* TEX.GOV'T CODE ANN. § 73.001. We follow the precedent of the Austin Court of Appeals to the extent they might conflict with our own. *See* TEX.R.APP.P 41.3.

In Issue One, Appellants argue the trial court did not possess jurisdiction over Colette's ultra vires claims. Colette counters, sovereign immunity does not bar ultra vires claims based on violations of constitutional rights. In Issue Two, Appellants argue the trial court did not possess jurisdiction over Colette's injunctive relief claims. Colette maintains jurisdiction is proper because it is not required to exhaust administrative remedies before seeking relief of constitutional violations.

## BACKGROUND

### *Factual Background*

Colette is a private, alternative lifestyle "swingers club" that provides a meeting place for its members. It does not sell alcohol and is open to the public, so long as each member signs and adheres to a membership agreement. All members must sign a membership agreement upon entrance; the membership agreement contains several contractual provisions and outlines the prohibition of cell phone usage beyond the lobby, as well as cameras, video, and audio equipment.

Comptroller agents inspected Colette on April 23, 2017, October 20, 2017, and November 30, 2018, at each of which visit they indicated Colette was not a SOB ("Sexually Oriented Business") under Section 102.051 and Section 3.722. TEX.BUS.&COM.CODE ANN. § 102.051; 34 TEX.ADMIN.CODE ANN. § 3.722. In November of 2018 and May of 2019, Colette alleges unidentified individuals, employed either by the Texas Comptroller or the Harris County Sheriff's Department, signed the membership agreement, entered the establishment, and videotaped at least two members of Colette engaged in sexual activity. Colette and the members at issue did not consent to this "search and videotaping." Oral depositions of Deputy "TB" and Deputy "AC" confirm these officials visited Colette and did not possess warrants. Deputy TB stated he did not believe a warrant was required because he paid the entrance fee like everyone

2

else. Deputy TB described "it's open to anybody with an I.D. and money. There was no vetting that went on. There's no card that they gave you. There's nothing to say, okay, fill out this application for membership. . . . As a matter of fact, one of the investigators [who was admitted into Colette] didn't even have an I.D." Deputy AC also confirmed he did not have a warrant in November 2018 when he visited Colette because he "walk[ed] into a business that's open to the public, which I was just a normal everyday patron entering it." During Deputy AC's deposition, a narrative was read aloud:

> Narrative: On Thursday, November 1, 2018, I, Sergeant E. Thomas . . . was employed by the Harris County Sheriff's Office as a sergeant investigator assigned to the vice unit. On the aforementioned date, the vice unit initiated an undercover investigation, was conducted to ascertain if illegal activities, namely, prostitution and any violations of state law and the Occupations Codes was occurring at the business.

A disposition of an unidentified investigative report was also read aloud during the deposition, "It says: No violations of the Harris County Sexually Oriented Business Regulations, Case will be closed."

According to Colette, it was informed by Harris County agents and employees about the existence of the video and it serving as the basis for the Comptroller's position that Colette is a SOB; the video was characterized as depicting "nudity in plain view" and "sex in plain view[.]" Colette alleges this case has not proceeded to a final tax determination, and that it has not received a written determination that it is a SOB or that it is subject to the SOBF ("Sexually Oriented Business Fee") statute and rules.

Colette filed the underlying lawsuit in response to the Comptroller's SOB assessment. In its original petition for declaratory judgment and ancillary relief, Colette argued: the Comptroller could not rely on an illegal search, its members' right to privacy was violated, it was not a SOB, Section 102.051 of the Texas Business and Commerce Code and Section 3.722 are unconstitutional

3

as applied, and requested injunctive relief to enjoin the enforcement of Section 102.051 and Section 3.722 and the use of the illegally obtained video, and orders compelling the Comptroller to produce a copy of the video. In response, Appellants filed a plea to the jurisdiction asserting sovereign immunity. The trial court partially granted the plea to the jurisdiction, dismissing Colette's applicability challenges for lack of jurisdiction, while denying the remainder of the plea. Appellants appeal the trial court's denial of the plea to the jurisdiction as to the ultra vires and injunctive claims.

### *Procedural Background*

Colette commenced the underlying lawsuit against Glenn Hegar, Texas Comptroller of Public Accounts of the State of Texas, Ken Paxton, Attorney General of the State of Texas, Jesus Vela, and Harris County by filing its original petition for declaratory judgment and ancillary injunctive relief. It subsequently dropped Harris County as a named defendant in its notice of non-suit. Appellants answered to the suit with a plea to the jurisdiction, asserting sovereign immunity and requesting Colette's claims be dismissed because it failed to plead cognizable APA and ultra vires claims and failed to follow the statutory prerequisites under the Tax Code. Colette thereafter filed a motion for summary judgment. In Appellants' responses to Colette's motion for summary judgment, and in their brief—and first amended brief—in support of their plea to the jurisdiction, Appellants raised the issue of ripeness as a threshold matter. Appellants maintained the issue of ripeness throughout the trial level, each time arguing there is no injury due to the absence of a decision by the Comptroller regarding Colette's SOB status. Appellants have now abandoned the issue of ripeness on appeal.

On July 30, 2020, the trial court held a remote hearing and denied Colette's motion for summary judgment. At that same hearing, the trial court granted in part and denied in part the plea

to the jurisdiction; it granted Appellants' plea to the jurisdiction as to the applicability challenge under Section 2001.038 of the APA, and denied the plea as to all other claims. This appeal followed.

## DISCUSSION

In two issues, Appellants challenge the trial court's denial of the plea to the jurisdiction as to Colette's ultra vires and injunctive relief claims. In Issue One, Appellants argue the trial court did not possess jurisdiction because Colette's ultra vires claims concern acts within the Comptroller's authority, seek retrospective relief, and are redundant to the relief it could obtain under the Tax Code. In Issue Two, Appellants maintain the trial court did not possess jurisdiction for Colette's injunctive relief claims because it failed to adhere to the statutory prerequisites of a Tax Code injunctive suit.

### *Standard of Review & Law Background*

Sovereign immunity implicates a court's subject matter jurisdiction. *EBS Solutions, Inc. v. Hegar*, 601 S.W.3d 744, 749 (Tex. 2020). We review a trial court's decision of a plea to the jurisdiction *de novo*, applying traditional principles of statutory interpretation to determine whether sovereign immunity has been waived. *Id*. "Although the trial court generally lacks jurisdiction to hear a taxpayer's challenge to a tax assessment, . . . the Legislature has waived the State's sovereign immunity as to three types of tax challenges—protests, injunctions, and refunds—conferring exclusive, original jurisdiction on the district courts of Travis County." *Id*. at 749-50; *see* TEX. TAX CODE ANN. §§ 112.108[2], 112.001.

---

[2] The Legislature repealed Section 112.108 in 2021 and revised the statutory scheme relating to taxpayers' suits. *See* Act of May 24, 2021, 87th Leg., R.S., ch. 331, § 11, 2021 TEX. GEN. LAWS 682, 685 (effective Sept. 1, 2021). The Act, however, provides, "[t]he changes in law made by this Act apply *only* to a suit to dispute an amount of tax, penalty, or interest that becomes due and payable on or after the effective date of this Act. A suit to dispute an amount of tax, penalty, or interest that became due and payable before the effective date of this Act is governed by the law as it existed immediately before the effective date of this Act, and the former law is continued in effect for that purpose." *Id*. at § 12 [Emphasis added].

Although Appellants have not raised the issue of ripeness on appeal, it is our duty and within our authority to do so. *See MRC Permian Co. v. Point Energy Partners Permian LLC*, 624 S.W.3d 643, 664 (Tex.App.—El Paso 2021, pet. filed)("A lack of subject matter jurisdiction cannot be waived, can be raised at any time, and may be considered by a court sua sponte. [] Ripeness is one component of subject matter jurisdiction that a court should consider when determining whether it has jurisdiction over a case.").

As a threshold matter, ripeness is a component of subject matter jurisdiction. *Harris Cty. Appraised Dist. v. Boyaki*, No. 14-18-00017-CV, 2019 WL 1526431, at *5 (Tex.App.—Houston [14th Dist.] 2019, no pet.)(mem. op.). While standing hinges on who may bring an action, ripeness examines when an action may be brought. *Lazarides v. Farris*, 367 S.W.3d 788, 802 (Tex.App.—Houston [14th Dist.] 2012, no pet.). Ripeness requires a concrete injury and is invoked to determine whether a dispute has matured to the point that warrants a decision. *City of Houston v. Commons at Lake Houston, Ltd.*, 587 S.W.3d 494, 499-500 (Tex.App.—Houston [14th Dist.] 2019, no pet.). The inquiry focuses on whether the case involves uncertain or contingent future events that may or may not occur as anticipated, or may not occur at all. *Id*. When determining whether a suit for declaratory judgment presents a ripe controversy, "the declaration sought must actually resolve the controversy." *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 685 (Tex. 2020)[Internal quotations omitted]. A case is not ripe when the plaintiff's injury depends on contingent or hypothetical facts, or on events that have yet come to pass. *Id*. "The essence of the ripeness doctrine is to avoid premature adjudication . . . [and] to hold otherwise would be the essence of an advisory opinion, advising what the law would be on a hypothetical set of facts." *Robinson v. Parker*, 353 S.W.3d 753, 756 (Tex. 2011)[Internal quotations omitted].

The intersection of the Texas Business and Commerce Code and the Texas Administrative Code provide for an imposition of a per customer fee on sexually oriented businesses. TEX.BUS.&COM.CODE ANN. § 102.051; 34 TEX.ADMIN.CODE ANN. § 3.722.

Section 102.051 defines a sexually oriented business as follows:

(2) 'Sexually oriented business' means a nightclub, bar, restaurant, or similar commercial enterprise that:

(A) provides for an audience of two or more individuals live nude entertainment or live nude performances; and

(B) authorizes on-premises consumption of alcoholic beverages, regardless of whether the consumption of alcoholic beverages is under a license or permit issued under the Alcoholic Beverage Code.

TEX.BUS.&COM.CODE ANN. § 102.051. The Texas Administrative Code, adopted by the Texas Comptroller, provides the same definition:

(4) Sexually oriented business--A nightclub, bar, restaurant, or similar commercial enterprise that:

(A) provides for an audience of two or more individuals live nude entertainment or live nude performances; and

(B) authorizes on-premises consumption of alcoholic beverages, regardless of whether the consumption of alcoholic beverages is under a license or permit issued under the Alcoholic Beverage Code.

34 TEX.ADMIN.CODE ANN. § 3.722. The imposition and calculation of fees of a sexually oriented business are set out in Section 3.722(d)(1): "A $5.00 fee is imposed on a sexually oriented business for each entry by each customer admitted to the business." *Id*. Sexually oriented businesses must also comply with reporting and recording requirements. *See id*. at § 3.722(d)-(f). The Texas Comptroller is responsible for the administration, payment, collection, and enforcement of these fees and requirements. TEX.BUS.&COM.CODE ANN. § 102.056 (*citing* TEX.TAX CODE ANN. § 111.001).

7

**Ripeness**

Central to the resolution of this interlocutory appeal is whether a final decision as to SOB status has been issued by the Comptroller. The parties' positions have not always been consistent. Colette maintains the Comptroller "presents no evidence from the record that this case has proceeded to a 'final tax determination' because it has not. Only preliminary assessments have been made for which the deadline to appeal have not run."

In their brief in support of the plea to the jurisdiction, Appellants stated, "[a]lthough Colette claims to seek a return of money paid, it has not paid any sexually-oriented business ('SOB') fees, the Comptroller has not assessed it any SOB fees, nor has the Comptroller issued a Decision holding that it is or is not a SOB." Appellants also stated, "Colette has not yet received a Comptroller Decision or any assessments mandating it to remit SOB fees, and as such it may or may not receive a Comptroller Decision holding that it is a SOB." Also attached to Appellants' brief in support of their plea to the jurisdiction, and part of the designated record on appeal, is the declaration of Emily Tipton, a Program Specialist in the Tax Litigation Division of the Comptroller of Public Accounts. The declaration has a certificate of service date of March 20, 2020. Tipton declared:

> 3. I have reviewed the business records and systems of the Comptroller as they involved reports, returns, and audit activity for [Colette] ('Taxpayer').
>
> 4. The Comptroller has not issued a deficiency assessment for sexually-oriented business fee liability to Taxpayer.
>
> 5. The Comptroller has not issued a jeopardy determination for sexually-oriented business fee liability to Taxpayer.
>
> 6. The Comptroller has not conduced an audit for sexually-oriented business fee liability for Taxpayer.
>
> 7. The Comptroller has not issued a tax refund denial for sexually-oriented business fee liability to Taxpayer.

8

8. The Comptroller has not issued a Comptroller Decision regarding Taxpayer's sexually-oriented business fee status.

In Appellants' reply brief, they now assert, "[Colette's] contention that 'this case has [not] proceeded to a 'final tax determination'' is disingenuous at best. . . . As noted earlier, the Comptroller issued [Colette] its SOB assessment on July 13, 2020." Aside from this contention, there is nothing in the record to support the Comptroller's issuance of a final decision or determination as to Colette's SOB status.

The sole evidence in the record as to any SOB assessments is the Tax Litigation Division of the Comptroller of Public Accounts declaration, in which Tipton states *no* decision by the Comptroller has been issued regarding Colette's SOB status or fees. Without a final decision or determination as to Colette's SOB status, the issue of ripeness becomes paramount. Determining whether administrative action is ripe requires evaluation of the issues' fitness for judicial decision and the hardship to the parties of withholding court consideration. *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 803 (2003). We rely on the only evidence within the record—that no final decision by the Comptroller has been made. Accordingly, we see no actual, existing hardship to the parties. The crux of this appeal is a contingent decision by the Comptroller and a hypothetical injury that has yet to occur. Accordingly, this Court lacks jurisdiction over this suit. As to Appellants' remaining issues, we do not reach them. *See* TEX.R.APP.P. 47.1.

## CONCLUSION

For these reasons, we dismiss for lack of jurisdiction.

November 29, 2021

YVONNE T. RODRIGUEZ, Chief Justice

Before Rodriguez, C.J., Palafox, and Alley, JJ.

9