SAN JACINTO COUNTY and San Jacinto County Commissioners Court, Appellants,

v.

John NUNN, Sr., Appellee.

No. 09–06–300 CV.

Court of Appeals of Texas, Beaumont.

Submitted Sept. 19, 2006.

Decided Sept. 28, 2006.

Mark E. Price, Dist. Atty., Coldspring, for appellants.

George D. Gordon, Baggett, Gordon & Deison, Conroe, for appellee.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

The issue in this case is whether San Jacinto County ("County") has governmental immunity from a suit for claims made by John Nunn, Sr. ("Nunn") arising from his written contract with the County. We conclude the County is immune from Nunn's suit and order his claims dismissed.

### Background

In his suit, Nunn asserts the County breached its written contract with him un-der which he provided consulting services for the County. The parties originally executed the contract on October 1, 2002. The contract contained a provision for automatic renewal unless it was cancelled in writing 30 days prior to the beginning of the County's fiscal year on October 1. The contract required the County to pay Nunn approximately $42,500 per annum. During the first year of the contract, the County paid the sum required by the contract. In a letter dated September 2, 2003, the County Judge advised Nunn that the County would be reviewing the emergency telephone program in its budget process, and that "it is possible the personal services contract with you will not be renewed for Fiscal Year 2004. This letter will suffice as the 30 day notice of termination if that proves to be the case." Subsequently, the County did not budget the funds to pay for Nunn's consulting services.

Nunn demanded payment under his written contract with the County on October 16, 2003. Nunn filed suit on October 31, 2005 naming as defendants San Jacinto County and San Jacinto County Commissioners Court.[1] Nunn seeks to recover payments allegedly owed to him for the

---

1. Although Nunn's citation reflects that he served San Jacinto County and the San Jacinto County Commissioners Court, he purportedly obtained service on both by serving the Court Judge. The San Jacinto County Commissioners Court is not a separate legal entity from the County. See generally Tex. Loc. Gov't Code Ann. § 71.001–.025 (Vernon 1999 & Supp.2006). Additionally, Rule 33 of the Texas Rules of Civil Procedure requires that "[s]uits by or against a county or incorporated city, town or village shall be in its corporate name." Nunn did not seek or obtain service on any of the County Commissioners individually. Nunn's suit fails to distinguish between his claims against the County and the Commissioners Court, and all of his claims arise from a written contract with the County. Thus, we assume Nunn intended to pursue his contract claim against the entity that entered into the contract. We discourage any implication that a party may properly attempt to sue a county by naming a non-existent entity, the county commissioners, or by naming individual county commissioners, because a county is not made a party to a suit by joining the individual commissioners. *Scott v. Graham,* 156 Tex. 97, 292 S.W.2d 324, 327 (1956). Here, San Jacinto County is the legal entity under the rules of procedure for breach-of-contract claims. Further, San Jacinto County was served, and it answered. Thus, we view Nunn's lawsuit as a suit against San Jacinto County because the County is a named party in a suit that also names the County Commissioners. We therefore treat Nunn's claims against the defendants as being asserted only against San Jacinto County.

period October 1, 2003 through October 1, 2006. Nunn contends that the County's letter dated September 2, 2003, did not terminate his contract and that his contract automatically renewed annually.

San Jacinto County answered, contending that the trial court had no subject matter jurisdiction. Also, the County pled that it paid Nunn for the first year and that the contract's automatic renewal provision was illegal because a county cannot obligate itself for debts beyond one budget year. The County asserted no claims for affirmative relief. Subsequently, the County moved for summary judgment and asserted that its sovereign immunity prohibited the trial court's exercise of subject matter jurisdiction over Nunn's suit. After the trial court denied the County's motion for summary judgment, the County appealed.

### Jurisdiction Over Appeal

■ On appeal, Nunn contends that we do not have jurisdiction. However, section 51.014(a)(8) of the Texas Civil Practice and Remedies Code gives us jurisdiction over the interlocutory appeal of a summary judgment order in which the trial court expressly or implicitly denies a governmental unit's jurisdictional challenge. *Thomas v. Long*, 49 Tex. Sup.Ct. J. 532, 2006 WL 1043429, at *4, —— S.W.3d ——, —— (Tex. April 21, 2006)(not yet released for publication). While generally a party may appeal only a final judgment or order, section 51.014(a)(8) provides an exception to the rule. This statute allows an interlocutory appeal from an order that "grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001." Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(8) (Vernon Supp.2006). A county is expressly included as a governmental unit in section

101.001. Tex. Civ. Prac. & Rem.Code Ann. § 101.001(3)(B) (Vernon 2005).

■ The County's summary judgment motion included a challenge to the trial court's jurisdiction. In denying the motion, the trial court found there was "a disputed fact issue." The trial court's order implies that it rejected the County's challenge to the court's jurisdiction over the dispute. "That implicit denial satisfies section 51.014(a)(8) of the Texas Civil Practice and Remedies Code and gives the court of appeals jurisdiction to consider [the] interlocutory appeal." Thomas at *4. Based on the Texas Supreme Court's ruling in Thomas, we hold that we have jurisdiction over the County's appeal.

### Jurisdiction Over the Suit

The County asserts the trial court's order denying summary judgment should be reversed because the County is immune from a suit over Nunn's breach of contract claim. The County further asserts that it did nothing to waive its immunity from suit.

■ The doctrine of governmental immunity protects counties. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n. 3 (Tex.2003); *Travis County v. Pelzel & Associates, Inc.*, 77 S.W.3d 246, 248 (Tex. 2002) ("A county is a governmental unit protected by the doctrine of sovereign immunity."). Immunity from suit deprives a trial court of subject-matter jurisdiction unless the state consents to suit. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex.2004); *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). "A party may establish consent by statute or legislative resolution." *Pelzel*, 77 S.W.3d at 248.

In *Federal Sign v. Texas Southern University*, the Texas Supreme Court held sovereign immunity barred a breach of

contract claim asserted by Federal Sign against Texas Southern University (TSU), a governmental entity. *Federal Sign v. Texas Southern University,* 951 S.W.2d 401, 403 (Tex.1997), superceded by statute on other grounds as stated in *Gen. Servs. Comm'n v. Little–Tex Insulation Co.,* 39 S.W.3d 591, 593 (Tex.2001). The facts of Federal Sign are straightforward. TSU accepted Federal Sign's bid to build scoreboards for the school. After Federal Sign began building the scoreboards, but before their delivery, TSU cancelled its order. TSU asserted that sovereign immunity barred Federal Sign's breach of contract claim. *Id.* The Texas Supreme Court held that TSU was immune from suit under the doctrine of sovereign immunity and ordered the suit dismissed. *Id.* at 403, 408–09.

■ The Texas Supreme Court recognizes a distinction between immunity from suit, which bars legal action against the State, and immunity from liability, which protects the State from judgments. *Id.* at 405–06. A governmental entity can waive immunity from liability, but not immunity from suit. *Id.* Following Federal Sign, the Texas Supreme Court explained the distinction as follows:

> Immunity from liability and immunity from suit are two distinct principles. Immunity from liability protects the state from judgment even if the Legislature has expressly consented to the suit. Like other affirmative defenses to liability, it must be pleaded or else it is waived. Immunity from liability does not affect a court's jurisdiction to hear a case.

> In contrast, immunity from suit bars an action against the state unless the state expressly consents to the suit. The party suing the governmental entity must establish the state's consent, which may be alleged either by reference to a statute or to express legislative permission. Since as early as 1847, the law in Texas has been that absent the state's consent to suit, a trial court lacks subject matter jurisdiction.

*Jones,* 8 S.W.3d at 638 (citations omitted).

Therefore, we review the record to determine whether Nunn established that the County consented to being sued. Nunn's First Amended Petition asserts that he "performed the services contracted for" and that those services included "engineering, architectural or construction services" as allowed under section 262.007 of the Local Government Code. On appeal, Nunn relies on the statutory waiver provision contained in section 262.007 and argues that it operates to waive the County's immunity from his suit. Nunn directs us to no other provisions establishing the County's alleged waiver of its immunity from suit.

Because it is relevant to the resolution of the question presented, we set out the full text of section 262.007, which provides:

### § 262.007. Suit Against County Arising Under Certain Contracts

(a) A county that is a party to a written contract for engineering, architectural, or construction services or for goods related to engineering, architectural, or construction services may sue or be sued, plead or be impleaded, or defend or be defended on a claim arising under the contract. A suit on the contract brought by a county shall be brought in the name of the county. A suit on the contract brought against a county shall identify the county by name and must be brought in a state court in that county.

(b) The total amount of money recoverable from a county on a claim for breach of the contract is limited to the following:

(1) the balance due and owed by the county under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration;

(2) the amount owed for change orders or additional work required to carry out the contract;

(3) reasonable and necessary attorney's fees that are equitable and just; and

(4) interest as allowed by law.

© An award of damages under this section may not include:

(1) consequential damages, except as allowed under Subsection (b)(1);

(2) exemplary damages; or

(3) damages for unabsorbed home office overhead.

(d) This section does not waive a defense or a limitation on damages available to a party to a contract, other than a bar against suit based on sovereign immunity.

(e) This section does not waive sovereign immunity to suit in federal court.

Tex. Loc. Gov't Code Ann. § 262.007 (Vernon 2005).

Also relevant to our opinion is the enabling language of section 262.007, which provides:

Section 4. (a) This Act takes effect September 1, 2003.

(b) This Act applies only to a claim arising under a contract executed on or after September 1, 2003. A claim that arises under a contract executed before September 1, 2003, is governed by the law as it existed on the date the contract is executed, and the former law is continued in effect for that purpose.

Act of May 29, 2003, 78th Leg., R.S., ch. 1203, § 4, 2003 Tex. Gen. Laws 3419.

■ The County argues that because it executed the contract at issue prior to September 1, 2003, section 262.007 does not apply. The County further argues that the provision does not apply to Nunn's contract because he did not provide engineering, architectural, or construction services. Conversely, Nunn argues that section 262.007 applies because the contract automatically renewed and became a new contract after September 1, 2003. However, Nunn cites no case law that deems the renewal date of a contract as the equivalent of the contract's execution date. Nunn also argues that his pleadings, which assert that he provided engineering, architectural, and construction services, must be taken as true. Nunn contends the County's summary judgment evidence is insufficient to establish, as a matter of law, that his services did not include engineering, architectural, or construction services.

The October 1, 2002 execution date on Nunn's contract with the County pre-dates the effective date of section 262.007. Nunn cites no cases holding that the Legislature intended the enabling provision of section 262.007 to allow the statute to reach contracts that were executed prior to the statute's effective date but that contain automatic renewal provisions.

Thus, we must decide whether a contract that contains an automatic renewal provision is considered to be re-executed on its automatic renewal date. In analyzing the enabling provision of section 262.007, we look to the common meaning of the term "executed" in the context of contracts, as required by section 311.011 of the Code Construction Act. Tex. Gov't Code Ann. § 311.011 (Vernon 2005). In Black's Law Dictionary, execute means "[t]o make (a legal document) valid by signing; to bring (a legal document) into

its final, legally enforceable form <each party executed the contract without a signature witness>." Black's Law Dictionary 609 (8th ed.2004). "Execute" as defined in Webster's Dictionary means to "perform what is required to give validity to (as by signing and perhaps sealing and delivering) <~ a deed>." Webster's Third New International Dictionary 794 (2002).

Based upon the common usage of "executed" as reflected by Black's and Webster's, we hold that "executed," as commonly used in the context of a written contract signed by the parties, means the date the contract is signed. In this case, the parties signed the contract once, and this act occurred prior to the effective date of section 262.007. Although the parties could have contracted to require a re-execution before the contract renewed, they did not. Our interpretation of the parties' use of the term "execute" appears consistent with their use of the term.

Our construction of the renewal provision in the contract is consistent with the Legislature's mandate that "a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language." Tex. Gov't Code Ann. § 311.034 (Vernon Supp. 2006). The construction of "executed" urged by Nunn could result in broadening waivers of sovereign immunity in situations where the governmental unit did not clearly intend to waive its sovereign immunity. We do not believe the Legislature clearly and unambiguously intended a general waiver of a county's governmental immunity in situations where a contract is renewed, rather than executed after the effective date of section 262.007.

In conclusion, the pleadings before the trial court failed to demonstrate that the County waived its immunity from Nunn's suit. We hold the trial court erred in failing to dismiss Nunn's suit. We reverse the trial court and render judgment dismissing Nunn's claims because the trial court lacked subject matter jurisdiction.

REVERSED AND RENDERED.