CITY OF MAGNOLIA, City of Magnolia 4A Economic Development Corporation and City of Magnolia 4B Community Development Corporation, Appellants

v.

David SMEDLEY, Appellee

No. 09-15-00334-CV

Court of Appeals of Texas, Beaumont.

Submitted January 7, 2016

Opinion Delivered July 28, 2016

2

Ramón G. Viada III, Viada and Strayer, The Woodlands, TX, for Appellant.

Jon Parchman, K. C. Ghanean, Parchman Law Group, PLLC, The Woodlands, TX, for Appellee.

Before McKeithen, C.J., Horton and Johnson, JJ.

## MEMORANDUM OPINION

LEANNE JOHNSON, Justice

The City of Magnolia (City), City of Magnolia 4A Economic Development Corporation, and City of Magnolia 4B Community Development Corporation (the MDCs)[1], collectively Appellants, were named as defendants along with other parties in a lawsuit filed by David Smedley (Appellee, Smedley, or Plaintiff), wherein Smedley alleged that the defendants caused his property to flood. The City and the MDCs filed this interlocutory appeal of two orders entered by the trial court on July 27, 2015, wherein the trial court denied the motion for summary judgment filed by the MDCs, and the trial court denied in part and granted in part the City's Plea to the Jurisdiction or, Alternatively, Motion for Summary Judgment.

The Appellants' notice of appeal asserts that this Court has jurisdiction over the interlocutory appeal pursuant to section 51.014(a)(8) of the Texas Civil Practice and Remedies Code. *See Thomas v. Long*, 207 S.W.3d 334, 339 (Tex. 2006) (appellate courts have jurisdiction under section 51.014(a)(8) to entertain interlocutory appeals from the denial of a plea to the jurisdiction or motion for summary judgment challenging subject matter jurisdiction); *Tex. DOT v. Guidry*, No. 09-06-419 CV, 2007 WL 1501146, at *2, 2007 Tex. App. LEXIS 4080, at **4–5 (Tex. App.—Beaumont May 24, 2007, pet. denied)

(mem. op.) ("An interlocutory appeal is available when a trial court denies a governmental unit's challenge to subject matter jurisdiction, irrespective of the underlying procedural vehicle used in obtaining the ruling."); *San Jacinto Cty. v. Nunn*, 203 S.W.3d 905, 907 (Tex. App.—Beaumont 2006, pet. denied) (section 51.014(a)(8) of the Texas Civil Practice and Remedies Code gives the court of appeals jurisdiction over the interlocutory appeal of a summary judgment order in which the trial court expressly or implicitly denies a governmental unit's jurisdictional challenge). As to the MDCs, we dismiss for lack of jurisdiction and do not reach the merits. As to the City, we affirm that part of the trial court's order granting the City's plea to the jurisdiction pertaining to claims under the Texas Tort Claims Act and Water Code, we reverse the trial court's order denying the City's plea as to the takings claim, and we remand to the trial court as to the ultra vires claims, if any.

## FACTUAL BACKGROUND

David Smedley, a Florida resident, alleged that he owns real property described with a physical address of 511 Magnolia Blvd., Magnolia, Texas 77354, hereinafter "the Smedley Property." Smedley allegedly leases the building located on the Smedley Property. On November 11, 2014, Smedley filed an Original Petition against the City, Burditt Consulting, LLC (Burditt), and Chicken Express, Inc. (Chicken Express), alleging that the defendants caused the Smedley Property to flood and retain standing water, causing damages to Smedley and to the Smedley Property and to fixtures and improvements thereon.

---

1. City of Magnolia 4A Economic Development Corporation and City of Magnolia 4B Community Development Corporation are two separate entities and refer to themselves collectively in their joint pleadings and briefs as "the Magnolia Dev. Corps." In this Opinion, we refer to the two entities collectively as "the MDCs."

Smedley alleged that until 2004, water drained off of the Smedley Property. Smedley alleged that in 2004, Chicken Express constructed a parking lot on the northeast side of the Smedley Property, and thereafter, in 2011, the City completed construction of the "Magnolia Stroll," which included a walkway adjacent to the northern edge of the Smedley Property.

Smedley alleged in his Original Petition that the Smedley Property had been " 'taken, damaged, or destroyed for or applied to public use without adequate compensation[,]' so that sovereign immunity is waived under the Texas State Constitution Takings Clause, Tex. Const. art. I § 17." Smedley also alleged that:

> The occurrence and damage to the property described in this petition is a direct and proximate result of the negligence of Defendant, City of Magnolia and its agents, servants, and officers in the following particulars: The Defendant, City of Magnolia, through the use of motor driven equipment and with the negligently designed plans of Defendant, Burdit[t] Consultants Inc., negligently altered the slope of the area of and adjacent to the Plaintiff's property during the construction of the "Magnolia Stroll."

Smedley alleged that Chicken Express and the City violated section 11.086 of the Texas Water Code, and that "the Defendants City of Magnolia and Chicken Express, Inc., diverted the natural flow of diffuse surface water across the land owned by them, allowing and causing the water to stream onto and over the plaintiff's property." Smedley sought damages and injunctive relief, specifically asking the trial court to "enjoin the defendant from allowing surface water to gather on plaintiff's property[ ]" and to "extend the injunction so as to permanently enjoin the defendants

from such conduct that would allow surface water to gather and order the defendant to return water flow to pre-construction direction."

The City filed an Answer and therein alleged that governmental immunity barred the claims, that Smedley failed to assert a valid takings claim, and that the statute of limitations barred any claims accruing more than two years prior to the suit.

Later, Smedley filed a motion to dismiss his claims against Chicken Express and the motion was granted by the trial court in an order signed January 20, 2015. Smedley also filed an agreed motion to dismiss all claims against Burditt. On March 3, 2015, the trial court granted the motion, dismissing without prejudice Smedley's claims against Burditt.

On April 9, 2015, Smedley filed Plaintiff's 1st Amended Petition (Amended Petition), once again asserting claims against the City, and adding the MDCs, B&C Constructors, L.P. and CJR Lucky, Inc. as defendants.[2] Smedley alleged in his Amended Petition that

> 13. 511 Magnolia Blvd. was built in 1901 and was known as the old Dean's Store when the railroad first came to the city of Magnolia. In 2004, Defendant CRJ [sic] Lucky[,] Inc., constructed a parking lot to the north east of Plaintiffs['] property. In 2011, the Defendant, City of Magnolia, completed construction on a walk way adjacent to the northern edge of 511 Magnolia Blvd. called the Magnolia Stroll through the direction and instruction of the Defendant 4A Corp. and 4B Corp[.] using the services of the Defendant B&C Constructors, L.P. Prior to this construction, the Plaintiff's property had not been

---

**2.** B&C Constructors, L.P. and CJR Lucky, Inc. are not parties to this appeal.

subjected to consistent flooding when it rained.

14. From 1900 to 2004, 511 Magnolia Blvd. drained surface water to the northeast at a slope of 1.2%. In 2004 Defendant CRJ [sic] Lucky, Inc., carried out construction of a parking lot in the area adjacent to where the surface water used to be drained, creating a partial damming effect.

15. In 2011, the City of Magnolia, through the direction and funding by 4A Corp. and 4B Corp. completed the Magnolia Stroll through the use of Defendant B&C Constructors[,] L.P. The Stroll ran along the northern portion of the Plaintiff's property and its finished construction completed the damming effect initiated by Defendant CJR Lucky[,] Inc.'s construction of the parking lot in 2004.

16. Subsequent to the completion of the parking lot and the Magnolia Stroll, whenever significant rainfall occurs surface water is impounded in an area between the Plaintiff's property and Defendant CJR Lucky[,] Inc.'s parking lot. This impoundment of water has caused extensive damage to the Plaintiff's land, to the fixtures and improvements on that land, including a significant degradation of floor elevation in the building, reduction of vertical clearance in the crawlspace below the building, and rot of wood girders, joists and wall studs.

17. Plaintiff discovered the damage done to his property in August of 2013, at which point he sent a certified letter to the Defendant, City of Magnolia, informing them of his claim, which was essentially ignored.

18. The Plaintiff has hired at his own expense professional engineers who have investigated the construction of Defendant CJR Lucky[,] Inc.'s parking lot and Defendant City of Magnolia's Magnolia Stroll who informed the plaintiff that similar flooding will recur each time there is significant rainfall.

In the Amended Petition, Smedley specifically alleged that Smedley suffered a "taking of his property" in violation of Section 17 of Article 1 of the Constitution of the State of Texas as a result of the construction of the Magnolia Stroll by the City, and that the City "had, has, or should have had, actual knowledge that the flooding described above would occur and will continue in the future." Smedley also alleged a claim against the City under the Texas Tort Claims Act stating that the City and its employees were negligent in "the operation of motor driven equipment during the construction of the Magnolia Stroll resulting in property damage" and that the City is liable under the Texas Tort Claims Act because "[t]he City was performing a proprietary function by a municipality, i.e., the construction and design of a street, when it damaged the personal property of the Plaintiff so that Defendant may not claim sovereign immunity." Smedley further alleged that the City violated section 11.086 of the Texas Water Code.

In the Amended Petition, Smedley also alleged that

24. The occurrence and damage to the property described in this petition is a direct and proximate result of the negligence of Defendant, City of Magnolia, the Defendant 4A Corp., the Defendant 4B Corp., the Defendant B&C Constructors[,] L.P. and their agents, servants, and officers in the following particulars: The Defendant, City of Magnolia, with direction and funding through the Defendant 4A Corp. and 4B Corp., and the employment of Defendant B&C Constructors[,] L.P., through the use of motor driven equipment and negligently altered the slope of the area of and adjacent to the

Plaintiff's property during the construction of the "Magnolia Stroll."

. . . .

28. With the construction of the parking lot and the construction of the Magnolia City Stroll, the Defendants City of Magnolia and CJR Lucky, Inc., diverted the natural flow of diffuse surface water across the land owned by them, allowing and causing the water to stream onto and over the plaintiff's property. Specifically, the parking lot and the [s]troll respectively create a damming effect of the previously flowing diffuse surface water causing it to pool on the Plaintiff's property during the rain.

Smedley sought a judgment for actual and special damages, and he requested that "[t]he defendants be enjoined permanently from allowing diffuse surface water from gathering on the Plaintiff's property, and ordered to return the drainage of the property to be returned its natural position, all as more particularly set out in Paragraph 28 of [the] petition."

On May 8, 2015, the MDCs filed an Original Answer to the Amended Petition and a Motion to Dismiss and Plea to the Jurisdiction. In the Motion to Dismiss and Plea to the Jurisdiction, the MDCs alleged that Smedley is asserting claims against the MDCs for flooding but Smedley had no basis in fact or law under the three theories of recovery he claimed, which included (1) negligence, (2) section 11.086(a) of the Texas Water Code, and (3) taking (inverse condemnation). The MDCs sought a dismissal under Rule 91a of the Texas Rules of Civil Procedure, and argued that the petition failed to state a valid claim against them because the design and construction of the Magnolia Stroll is a discretionary function exempted from the Tort Claims Act waiver of immunity, Smedley has not alleged facts establishing a negligence claim for which the MDCs' governmental immunity has been waived by the Texas Tort Claims Act, section 11.086 of the Water Code does not waive governmental immunity from suit, Smedley has not alleged facts tending to prove that the MDCs own or control any of the property in question or that such entities have authority to restore the drainage to its nature state before the construction of the Stroll, the MDCs are immune from liability for a judgment for money damages under the Local Government Code, Smedley has not alleged facts tending to prove that the MDCs have taken his property or have taken his property for any public use, and that Smedley has not alleged facts that would tend to prove the MDCs were delegated the power of eminent domain to take his property.

The MDCs set their Motion to Dismiss and Plea to the Jurisdiction for ruling by submission to be heard on Monday, June 15, 2015. Smedley filed a response to the MDCs' Motion to Dismiss and Plea to the Jurisdiction. In his response, Smedley argued that corporations such as the MDCs do not have the "expansive governmental immunity from suit" as alleged by the MDCs, and that by statute the MDCs would only have immunity from liability for damages arising as tort claims and "from damages[,]" and because "Plaintiff's Amended Petition has the statutory claims of Tex. Water Code § 11.086, the Defendants' Plea to Jurisdiction is therefore improper" and should be denied.

The MDCs filed a Reply to Plaintiff's Response to Motion to Dismiss. In their Reply, the MDCs argued that Smedley conceded in his response that he cannot recover damages against them because sections 504.107(b) and 505.106(b) of the Local Government Code grant immunity from liability from damages only, that Smedley incorrectly asserted that the bar to liability on damages only applies to torts

and that the cause of action provided by section 11.086 of the Water Code is not a tort cause of action, that the case cited by Smedley regarding section 505.106(b) is distinguishable and did not hold that the immunity did not apply to a statutory tort claim such as a claim for damages under section 11.086 of the Water Code, that Smedley lacks standing to sue the MDCs under section 11.086, and that Smedley concedes that his negligence claim is barred by immunity and offers no rebuttal to the arguments that his claim for a taking cannot be brought against the MDCs or that he lacks standing to seek injunctive relief against the MDCs.

On June 10, 2015, the City filed what it styled as its "Plea to the Jurisdiction or, Alternatively, Motion for Summary Judgment[,]" arguing that Smedley's claims against the City should be dismissed because the trial court lacked subject matter jurisdiction, or alternatively the City is entitled to a summary judgment on all claims as a matter of law. The City argued the following basis for dismissal and summary judgment:

A. Negligence.

(1) As a matter of law, the design and construction of the Magnolia Stroll is a discretionary function, exempted from the Tort Claims Act waiver of immunity. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.056.

(2) The Plaintiff cannot prove a negligence claim for which the City's governmental immunity from suit has been waived by the Texas Tort Claims Act, Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1). In particular,

(a) there are no allegations of facts which, if true, would tend to show that the alleged property damage in question was caused by the negligence of a city employee acting within the scope of his employment;

(b) no evidence exists to prove that the alleged property damage in question was caused by the negligence of a city employee acting within the scope of his employment;

(c) there are no allegations of facts which, if true, would tend to prove that the alleged property damage in question arose from any negligence by the City in the use or operation of a motor-driven vehicle or motor-driven equipment;

(d) no evidence exists to prove that the property damage in question arose from any negligence by the City in the use or operation of a motor-driven vehicle or motor-driven equipment.

(3) The two-year statute of limitations bars Plaintiff's negligence claim against the City as a matter of law.

B. Tex. Water Code § 11.086.

(1) Section 11.086 does not waive governmental immunity from suit. Therefore, on the face of the pleadings, the Court lacks jurisdiction to entertain the Plaintiff's claim under that statute against the City.

(2) The Plaintiff's Section 11.086 claim is barred by the applicable two-year statute of limitations.

(3) Under Tex. Water Code § 11.086(a), there is no evidence of any of the three elements for liability—that is, no evidence that:

(a) the City has diverted or impounded the natural flow of surface water;

(b) in such manner as to cause;

(c) damage to the property of the Plaintiff Smedley.

(4) As a matter of law, the impoundment and/or diversion of that natural flow of water onto the Smedley property was directly caused—as Smedley has ad-

mitted—by the elevation and paving of the adjoining Chicken Express lot in 2005, some six years before the construction of the Magnolia Stroll.

C. Taking.

(1) As a matter of law, the property damage in question was not caused intentionally by the City.

(2) No evidence exists to prove that the property damage in question was caused intentionally by the City.

(3) As a matter of law, the City has not taken or damaged the Plaintiff's property.

(4) No evidence exists to prove that the City has taken or damaged the Plaintiff's property.

(5) As a matter of law, the property damage in question was not done for any public use.

(6) No evidence exists to prove that the property damage in question was done for any public use.

D. Notice of Claims.

As a matter of law, Smedley has failed to satisfy the City's notice of claim ordinance, MAGNOLIA CODE § 2-265.

A declaration, copies of certain correspondence, a diagram, photos, and plans and specifications for the Magnolia Stroll were attached to the City's Plea to the Jurisdiction or, Alternatively, Motion for Summary Judgment. One of the attachments to the declaration, is a copy of a letter dated June 22, 2005, from Smedley to then-City Administrator, Roger Carlisle. In the June 2005 letter, Smedley complained about the pooling of the water, which he then attributed to the building and paving of the Chicken Express property adjacent to his property. Another letter dated June of 2006 is also attached to the declaration, wherein Smedley again complained to the City Manager about water and drainage that developed following the building of the Chicken Express and adjacent parking lot. Smedley filed a Response to the City's Plea to the Jurisdiction or, Alternatively, Motion for Summary Judgment.

On June 15, 2015, the trial court signed an "Order on Motion to Dismiss and Plea to the Jurisdiction of Defendants City of Magnolia 4A Economic Development Corporation and 4B Community Development Corporation[.]" The order decrees that "the Motion and Plea be, and they are hereby, Granted as to all claims under the Texas Tort Claims Act and as to all claims for damages; otherwise, they are Denied." [3]

On June 24, 2015, the MDCs filed a no-evidence and traditional motion for summary judgment on Smedley's remaining

---

**3.** We note that on July 21, 2015, the trial court signed what was styled as Amended Order on Motion to Dismiss and Plea to the Jurisdiction of Defendants City of Magnolia 4A Economic Development Corporation and 4B Community Development Corporation, wherein the trial court again decreed that "the Motion and Plea be, and they are hereby, Granted as to all claims under the Texas Tort Claims Act and as to all claims for damages; otherwise, they are Denied." None of the parties on appeal contend that this Amended Order had any effect upon the appellate deadlines. *See generally Wells Fargo Bank, N.A. v. JRK-Villages at Meyerland, LLC,* No. 01-10-01076-CV, 2011 WL 61170, at *1, 2011 Tex. App. LEXIS 127, at **2–3 (Tex. App.—Houston [1st Dist.] Jan. 6, 2011, no pet.) (mem. op.) (section 51.014(a)(1) requires a party to appeal within twenty days of the original order); *Shelby v. Pennzoil Expl. & Prod. Co.,* No. 06-98-00113-CV, 1998 Tex. App. LEXIS 7666, at **3-5 (Tex. App.—Texarkana Dec. 11, 1998, no pet.) (mem. op.) (deadline for filing notice of appeal from order certifying class ran from date of original order, not from date of amended order, where there was no "fundamental alteration" from the first order to the second order).

claim for injunctive relief, arguing as follows:

As a matter of law, neither claim supports the requested injunction because the Magnolia Dev. Corps. do not own or control the Smedley Property or the Magnolia Stroll, and thus, these Defendants lack the power to comply with the requested injunction. Further, the Plaintiff['s] claims lack merit (or a jurisdictional basis) for the following additional reasons:

A. Section 11.086 of the Texas Water Code.

(1) The Plaintiff lacks standing to assert a claim against the Magnolia Dev. Corps. under Section 11.086 of the Texas Water Code because the Magnolia Development Corps. are not the proprietors of the Magnolia Stroll or of the Chicken Express tract.

(2) No evidence exists to prove that the Magnolia Dev. Corps. are proprietors of the Magnolia Stroll or of the Chicken Express tract. TEX. R. CIV. P. 166a(i).

(3) Under TEX. WATER CODE § 11.086(a), there is no evidence of any of the three elements for liability—that is, no evidence that:

(a) either of the Magnolia Dev. Corps. has diverted or impounded the natural flow of surface water;

(b) in such manner as to cause;

(c) damage to the property of the Plaintiff Smedley. Tex. R. Civ. P. 166a(i).

(4) As a matter of law, the impoundment and/or diversion of that natural flow of water onto the Smedley property was directly caused—as Smedley has admitted—by the elevation and paving of the adjoining Chicken Express lot in 2005, some six years before the construction of the Magnolia Stroll.

B. Tex. Const. art. I, section 17.

(1) No evidence exists that the Magnolia Dev. Corps. was delegated the power of eminent domain to take the Plaintiff's property. Thus, the Magnolia Dev. Corps. cannot be liable for a taking. TEX. R. CIV. P. 166a(i).

(2) As a matter of law, the Magnolia Dev. Corps. are not public entities with the power of eminent domain. TEX. LOC. GOV'T CODE § 501.010. Thus, the Magnolia Dev. Corps. cannot be liable for a taking.

(3) Injunctive relief cannot be granted under the Takings Clause in this case, because even if, *arguendo*, the Plaintiff is able to establish the elements of liability for a taking—which he cannot—he would have an adequate remedy at law (damages) from the City.

(4) No evidence exists to prove that the property damage in question was caused intentionally by either Magnolia Dev[.] Corp. TEX. R. CIV. P. 166a(i).

(5) As a matter of law, the property damage in question was not caused intentionally by either of the Magnolia Dev. Corps.

(6) No evidence exists to prove that either Magnolia Dev. Corp. has taken or damaged the Plaintiff's property. TEX. R. CIV. P. 166a(i).

(7) As a matter of law, the Magnolia Dev. Corps. have not taken or damaged the Plaintiff's property.

(8) No evidence exists to prove that the property damage in question was done for any public use. TEX. R. CIV. P. 166a(i).

(9) As a matter of law, the property damage in question was not done for any public use.

The MDCs attached copies of their articles of incorporation and bylaws, as well as a declaration of the City Administrator stating that the City has not conveyed any interest in the Magnolia Stroll to the MDCs, nor has the City delegated any power to the MDCs to maintain the Stroll or condemn property or take any action to alter the drainage of any tract in the City. It does not appear from the appellate record that Smedley ever filed a response to the MDCs' motion for summary judgment. On June 24, 2015, the MDCs filed a Notice of Submission for their motion for summary judgment, setting it for submission on July 27, 2015. On June 29, 2015, the City filed an Amended Notice of Submission for its Plea to the Jurisdiction or, Alternatively, Motion for Summary Judgment, resetting it for submission on July 27, 2015.

On July 27, 2015, the trial court signed an order, denying the motion for summary judgment filed by the MDCs and ordered that the "Plaintiff may, within 14 days, amend his pleadings to add or clarify claims, if any, for prospective relief (declaratory or injunctive relief to require compliance with statutory or constitutional provisions) against appropriate persons in their official capacity." Additionally, on that same day, the trial court signed an order on the City's Plea to the Jurisdiction or, Alternatively, Motion for Summary Judgment, wherein the trial court granted the City's plea to the jurisdiction "as to all claims under the Texas Tort Claims Act, and also Granted as to all claims under the Water Code (except as to claims, if any, for prospective relief [declaratory or injunctive relief to require compliance with statutory or constitutional provisions]) against appropriate persons in their official capacity; otherwise, they are Denied[,]" and the trial court ordered that "the Plaintiff may, within 14 days, amend his pleadings to add or clarify claims, if any, for

prospective relief (declaratory or injunctive relief to require compliance with statutory or constitutional provisions) against appropriate persons in their official capacity."

On August 3, 2015, the City and the MDCs filed a joint notice of appeal, and notice of stay pending interlocutory appeal. In the Notice of Appeal, the City and the MDCs each contend that they are appealing the two orders entered by the trial court on July 27, 2015. The parties submitted briefing on appeal and presented oral arguments before this Court. After oral argument, this Court requested additional briefing from the parties to address the issue of whether or not this Court has jurisdiction over the denial of the Development Corporations' motion for summary judgment in light of *City of Houston v. Estate of Jones*, 388 S.W.3d 663 (Tex. 2012), Tex. R. App. P. 26.1(b), 28.1(a) and Tex. Civ. Prac. & Rem. Code § 51.014(a)(8). Appellants and Appellee filed post-submission briefing pertaining to jurisdiction.

ISSUES ON APPEAL

On appeal, the Appellants contend that "[i]n effect, the July 27[th] orders refuse to dismiss on jurisdictional grounds Smedley's claims for injunctive relief under the Section 11.086 of the Water Code[,]" "[t]he court also refused to dismiss Smedley's claims against the City for damages and injunctive relief under the takings provision of the Texas Constitution[,]" and "[a]s to the [MDCs], the [trial] court refused to dismiss the taking claim for injunctive relief." Smedley argues on appeal that the City failed to meet its burden for a traditional or no-evidence motion for summary judgment, or for a plea to the jurisdiction, and that there are genuine issues of material fact pertaining to Smedley's inverse condemnation claim against the City. As to

the MDCs, Smedley argues they do not have the "expansive governmental immunity from suit[ ]" as alleged by the MDCs, and that by statute it would only have immunity from liability for damages arising from tort claims and from damages. According to Smedley, "Appellee's Amended Petition has not only tort claims but the statutory claim of Tex. Water Code § 11.086" and even though sections 504.107(a) and 505.106(a) of the Texas Local Government Code grant the MDCs immunity from liability from damages arising from the performance of governmental functions, immunity from liability "does not affect a court's jurisdiction to hear a case and cannot be raised in a plea to the jurisdiction."

In Appellants' Post-Submission Brief, the MDCs state that the Plea to the Jurisdiction filed by the MDCs was "denied in relevant part on June 15, 2015[ ], and no interlocutory appeal of that order was taken." According to Appellants,

> The second jurisdictional challenge [by the MDCs], a traditional and no-evidence motion for summary judgment, asserted not only the plaintiff's lack of constitutional standing, but also the lack of statutory standing under Section 11.086 of the Water Code [ ]. Significantly, the motion for summary judgment is not a pleadings challenge. It is founded on conclusive summary judgment proof that negates standing,[ ] and, as a no-evidence motion, it challenges Smedley's inability to produce legal sufficient evidence of standing. This summary judgment motion, which was denied on July 27, 2015[ ], was appealed from on August 3, 2015[ ].

According to the MDCs, their appeal of the denial of the summary judgment was timely and it is not barred by *City of Houston v. Estate of Jones*, because the motion for summary judgment asserted distinct grounds from the earlier Plea to the Jurisdiction and supported the dismissal of the remaining claims that Smedley filed against them. The MDCs argue that the earlier plea to the jurisdiction was based solely on the pleadings, whereas the motion for summary judgment is based on a lack of evidence and raised additional jurisdictional grounds for dismissal of the claim.

In Appellee's Post-Submission Brief, Smedley argues that the MDCs did not timely file a notice of interlocutory appeal. More specifically, Appellee argues that on June 15, 2015, the trial court granted the MDCs' Motion and Plea to Jurisdiction as to all claims under the Texas Tort Claims Act and as to all claims for damages, but otherwise denied the rest of the plea and motion. By virtue of that order, the Appellee argues that Smedley retained injunctive claims against the MDCs through the Takings Clause and Section 11.086 of the Water Code, and he states the trial court later also denied in all respects the motion for summary judgment filed by the MDCs.

Appellants state that they filed this interlocutory appeal under section 51.014(a)(8) of the Texas Civil Practice and Remedies Code. Appellants stated in their Opening Brief that the issues on appeal include the following:

1. Does Section 11.086 of the Water Code waive the City's immunity from suit for the injunctive relief sought by Plaintiff Smedley?

2. Does the evidence conclusively negate Smedley's takings claim against the City?

3. Is there no evidence to support Smedley's allegation that the City has taken Smedley's property?

4. Is there no evidence to support Smedley's allegation that the City took Smedley's property intentionally for a public use?

5. Are the Magnolia Development Corporations proper defendants in Smedley's suit for injunctive relief under Section 11.086 of the Water Code?

6. Are the Magnolia Development Corporations proper defendants in Smedley's suit for injunctive relief under Article I, Section 17 of the Texas Constitution?

7. Are Smedley's claims for injunctive relief redressible under Article I, Section 17 of the Texas Constitution?

While the Appellants do not provide specific briefing that corresponds to the stated issues, we construe the Appellants' briefs to include arguments that the trial court erred in failing to completely grant the City's Plea to the Jurisdiction or, Alternatively, Motion for Summary Judgment because: Smedley's pleadings and his own letters sent to the City prove conclusively that the City's construction of the Magnolia Stroll did not cause the flow of water or standing water about which Smedley complains; the City has governmental immunity from the remainder of his claims in this suit, which defeats subject matter jurisdiction, Section 11.086 of the Water Code is not a waiver, and the district court erred as a matter of law in refusing to dismiss the Plaintiff's claims for injunctive relief under that statute; Smedley's claim seeking an injunction commanding the City to solve the Plaintiff's drainage problem is a suit to control state action, which is barred by governmental immunity because there is no express waiver for such relief; and Plaintiff's takings claim under Article I, Section 17 of the Texas Constitution is barred by immunity because the claim is invalid on the evidence—"the City has not taken the Smedley Property, the City[ ] has not taken it intentionally, for any public use[;]"

and the takings clause does not authorize any injunctive relief.

We further construe the Appellants' briefs to include arguments that the trial court erred in refusing to grant the summary judgment filed by the MDCs because: the interlocutory appeal of the MDCs is based on standing—in particular, non-redressability, and the claims asserted by Smedley are not "redressable" against the MDCs; the MDCs are not proper defendants for claims under either Section 11.086 of the Water Code or Article I, Section 17 of the Texas Constitution; the MDCs do not own the Magnolia Stroll, they are in no position to carry out an injunction directing them to restore the land to the *status quo ante*, and the district court lacks subject-matter jurisdiction over Smedley's claims against the MDCs for the injunctive relief Smedley seeks against them.

## JURISDICTION

 A trial court must have subject-matter jurisdiction before it can exercise authority to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Subject-matter jurisdiction is never presumed and cannot be waived. *Id.* at 443-44. It may be raised for the first time on appeal by a party or *sua sponte* by a reviewing court. *Id.* at 445-46; *see Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012) (holding that appellate court could consider sovereign immunity issue raised for first time in interlocutory appeal); *Jack Jones Hearing Ctrs., Inc. v. State Comm. of Exam'rs in Fitting & Dispensing of Hearing Instruments*, 363 S.W.3d 911, 914 (Tex. App.—Austin 2012, no pet.). Whether a trial court has subject-matter jurisdiction is a question of law that we review de novo. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226, 228 (Tex. 2004).

A related but distinct concept pertains to jurisdiction over an appeal. While subject-matter jurisdiction can be raised at any time, it can be raised only before a court of competent jurisdiction. *See Jones*, 388 S.W.3d at 667 (refusing to consider untimely filed interlocutory appeal of denial of plea to jurisdiction); *Royal Indep. Sch. Dist. v. Ragsdale*, 273 S.W.3d 759, 766 n.7 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (refusing to consider challenge to trial court's subject-matter jurisdiction raised on appeal where appellant failed to timely file notice of appeal); *see also Siddiqui v. Unltd. Asset Recovery, Inc.*, No. 01-09-00026-CV, 2009 WL 3930748, at *2, 2009 Tex. App. LEXIS 8947, at **4–5 (Tex. App.—Houston [1st Dist.] Nov. 19, 2009, no pet.) (mem. op.) ("Without a timely filed notice of appeal, an appellate court has no jurisdiction to consider any complaint, even a complaint that the trial court had no subject matter jurisdiction over the case."). Because we cannot reach the merits of the Appellants' issues on appeal in the absence of appellate jurisdiction, we must first determine if we have appellate jurisdiction.

### APPELLATE JURISDICTION

Pursuant to section 51.014(a)(8), a person may appeal and this court may review an interlocutory order that "grants or denies a plea to the jurisdiction by a governmental unit[.]" Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2015). An interlocutory order and appeal is an accelerated appeal and must be filed within twenty days after the judgment or order is signed. Tex. R. App. P. 26.1(b), 28.1(a). It is undisputed by the parties to this appeal that this Court has jurisdiction over the City's interlocutory appeal. However, the parties disagree regarding this Court's jurisdiction over the interlocutory appeal filed by the MDCs. Appellee contends that "Appellants should have filed their notice of appeal within 20 days of the June 15, 2015 Trial Court order for this Court to have jurisdiction to hear the appeal[,]" and that the subsequent motion for summary judgment contained essentially the same jurisdictional arguments as the earlier Plea to the Jurisdiction, and the MDCs cannot use section 51.014(a)(8) to pursue an interlocutory appeal of the denial of the summary judgment because the Notice of Appeal was filed outside the twenty-day time period.

Generally, this Court does not have jurisdiction over appeals from interlocutory orders unless provided by statute. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007). Section 51.014 of the Texas Civil Practice and Remedies Code lists several types of interlocutory orders that may be immediately appealed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014.[4] According to Appellants, the ba-

---

4. We note that a party may also request a permissive appeal from the trial court in relation to a trial court's summary judgment ruling. Section 51.014(d) provides that on a party's motion or on its own initiative, a trial court in a civil action may, by written order, permit an appeal from an order that is not otherwise appealable if: (1) the order to be appealed involves a controlling question of law as to which there is a substantial ground for difference of opinion; and (2) an immediate appeal from the order may materially advance the ultimate termination of the litigation. Tex. Civ. Prac. & Rem. Code Ann.

§ 51.014(d) (West Supp. 2015). In addition, subsection (f) specifies the procedure for bringing a permissive interlocutory appeal under subsection (d). *Id.* § 51.014(f). An appellate court may accept an appeal permitted by subsection (d) if the appealing party, not later than the fifteenth day after the date the trial court signs the order to be appealed, files in the court of appeals having appellate jurisdiction over the action, an application for interlocutory appeal explaining why an appeal is warranted under subsection (d). *Id.* If the court of appeals accepts the appeal, the

sis for this interlocutory appeal is section 51.014(a)(8).

▮▮▮▮ Section 51.014 must be strictly construed. *See Jones*, 388 S.W.3d at 666; *City of Beaumont v. Armstead*, No. 09-15-00480-CV, 2016 WL 1053953, at *4, 2016 Tex. App. LEXIS 2809, at *9 (Tex. App.—Beaumont Mar. 17, 2016, no pet.) (citing *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 355 (Tex. 2001)). Under section 51.014(a)(8), an interlocutory appeal may be had when a trial court grants or denies a governmental unit's challenge to subject matter jurisdiction, "irrespective of the procedural vehicle used." *See Thomas*, 207 S.W.3d at 339. Accordingly, a party may take an interlocutory appeal from an order granting or denying a motion for summary judgment in which the movant challenged the trial court's jurisdiction. *See id.* (appellate courts have jurisdiction under section 51.014(a)(8) to entertain interlocutory appeals from the denial of a plea to the jurisdiction or motion for summary judgment challenging subject matter jurisdiction); *Lazarides v. Farris*, 367 S.W.3d 788, 796-97 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Guidry*, 2007 WL 1501146, at *2, 2007 Tex. App. LEXIS 4080, at **4-5; *Nunn*, 203 S.W.3d at 907. The party seeking the interlocutory appeal must timely file a notice of appeal within twenty days of the signing of the order of judgment that pertains to the trial court's ruling granting or denying the movant's challenge to the trial court's jurisdiction. *See Jones*, 388 S.W.3d at 666 (citing Tex. R. App. P. 26.1(b) and 28.1(a)).

In the case at bar, the MDCs filed a plea to the jurisdiction, arguing that there was no waiver of their governmental immunity, they could not be sued for claims under Article I, Section 17 or under the Water Code, and Smedley was not entitled to injunctive relief. After the trial court granted in part and denied in part the Plea to the Jurisdiction, the MDCs filed their motion for summary judgment.

The MDCs appeal from the July 27, 2015 Order denying their motion for summary judgment. In the motion for summary judgment, the MDCs argued that Smedley lacked standing or any right to sue under the Water Code or to file a "takings claim" against the MDCs, and the MDCs asserted a no-evidence motion and traditional motion for summary judgment as to all remaining claims. In order for this Court to have appellate jurisdiction over the MDCs' appeal, the appeal would have to be from an order "grant[ing] or den[ying] a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001[.]" *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8). On July 21, 2015, the trial court granted in part and denied in part the MDCs' plea to the jurisdiction and the MDCs did not file a timely appeal from that order. Rather, the MDCs appealed from the July 27, 2015 denial of their motion for summary judgment.

Although the MDCs styled their later pleading as a no-evidence and traditional motion for summary judgment and attacked the rest of Smedley's claims within the procedural vehicle of a motion for summary judgment, after comparing the substance of the MDCs' plea to the jurisdiction with the substance of their summary judgment motion, we conclude that the MDCs presented essentially the same immunity-based arguments with respect to Smedley's claims in both filings. *See Jones*, 388 S.W.3d at 666; *see also City of Hous-*

appeal is governed by the procedures in the Texas Rules of Appellate Procedure for pursuing an accelerated appeal. *Id.* The date the

court of appeals enters the order accepting the appeal starts the time applicable to filing the notice of appeal. *Id.*

*ton v. ATSER, L.P.*, 403 S.W.3d 354, 359 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (op. on reh'g) (discussing *Jones* and concluding city's later filing styled as summary judgment motion "merely restated the same grounds" as in its earlier plea to the jurisdiction; therefore, where city had failed to timely appeal denial of the plea, it could not appeal the later denial of a summary judgment under section 51.014(a)(8)). We conclude that this Court lacks appellate jurisdiction over the trial court's July 27th order denying the motion for summary judgment filed by the MDCs. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8). Therefore, we dismiss the interlocutory appeal of the MDCs without reaching the merits of the MDCs' motion for summary judgment. Notwithstanding the foregoing, we now proceed to the merits of the City's interlocutory appeal.

STANDARDS OF REVIEW

We review de novo a trial court's disposition of a plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 226, 228. We focus first on the plaintiff's petition to determine whether the facts that were pleaded affirmatively demonstrate that subject matter jurisdiction exists. *Id.* at 226. We construe the pleadings liberally in favor of the plaintiff. *Id.* If the plaintiff has not affirmatively pleaded facts to support jurisdiction or to negate jurisdiction, the matter is one of pleading sufficiency, and the court should provide the plaintiff with the opportunity to amend its pleadings to cure jurisdictional defects. *Id.* at 226-27.

If a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. *Id.* at 227; *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). When evidence is submitted that implicates the merits of the case, our standard of review generally mirrors the summary judgment standard under Texas Rule of Civil Procedure 166a(c). *Miranda*, 133 S.W.3d at 228; *see also* Tex. R. Civ. P. 166a(c). The burden is on the governmental unit to present evidence to support its plea. *Miranda*, 133 S.W.3d at 228. If the governmental unit meets its initial burden, the burden then shifts to the plaintiff to show that a disputed material fact exists regarding the jurisdictional issue. *Id.* We take as true all evidence that is favorable to the plaintiff and indulge every reasonable inference and resolve any doubts in the plaintiff's favor. *Id.* If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact question will be resolved by the fact finder. *Id.* at 227-28. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, however, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. When a trial court does not make findings of fact and conclusions of law, we will affirm the trial court's order denying the plea to the jurisdiction if it can be upheld on any legal theory that finds support in the evidence. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

Governmental "immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction." *Miranda*, 133 S.W.3d at 225-26. The jurisdictional challenges in the City's Plea to the Jurisdiction, or Alternatively, Motion for Summary Judgment raise questions of law that we review de novo on appeal. *See Lazarides*, 367 S.W.3d at 797. We have jurisdiction to review a trial court's order that grants or denies a summary judgment as to grounds on which the governmental entity challenged the trial court's subject matter ju-

risdiction, provided such appeal is timely filed. *See id.*

 A no-evidence summary judgment motion is essentially a pretrial directed verdict motion. *See King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 749 (Tex. 2003). In a no-evidence summary judgment motion, the movant contends that there is no evidence of one or more essential elements of the claims for which the non-movant would bear the burden of proof at trial. Tex. R. Civ. P. 166a(i). The trial court must grant the motion unless the non-movant produces summary judgment evidence raising a genuine issue of material fact. *Id.* As in a directed verdict context, the trial court must review the evidence in the light most favorable to the non-movant, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *See Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 582 (Tex. 2006) (citing *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005)).

### ANALYSIS

As stated above, the trial court granted the City's Plea to the Jurisdiction "as to all claims under the Texas Tort Claims Act, and also Granted [the Plea] as to all claims under the Water Code (except as to claims, if any, for prospective relief [declaratory or injunctive relief to require compliance with statutory or constitutional provisions]) against appropriate persons in their official capacity; otherwise, they are Denied[,]" and the trial court ordered that "the Plaintiff may, within 14 days, amend his pleadings to add or clarify claims, if any, for prospective relief (declaratory or injunctive relief to require compliance with statutory or constitutional provisions) against appropriate persons in their official capacity." Smedley did not file a cross-appeal.

From our reading of the trial court's July 27th Order, the only claims against the City that remained include prospective relief, whether declaratory or injunctive, that would be required for compliance with any viable statutory or constitutional provisions, against appropriate persons in their official capacity, and a takings claim, if any.

 As for any takings claim, we conclude that the trial court erred in failing to grant the City's Motion for Plea to the Jurisdiction or, Alternatively, Motion for Summary Judgment because Smedley did not create a genuine issue of material fact as to each element of his takings claim. Article I, Section 17 of our State Constitution provides:

> No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person....

Tex. Const. art. I, § 17(a). Those seeking recovery for a taking must prove the government "intentionally took or damaged their property for public use, or was substantially certain that would be the result." *City of Keller,* 168 S.W.3d at 808. To defeat the City's plea to the jurisdiction, Smedley must raise a fact issue as to intent, causation, and public use. *See Gen. Servs. Comm'n v. Little–Tex Insulation Co.,* 39 S.W.3d 591, 598 (Tex. 2001).

 In a takings case, "the requisite intent is present when a governmental entity knows that a specific act is causing identifiable harm or knows that the harm is substantially certain to result." *Tarrant Reg'l Water Dist. v. Gragg,* 151 S.W.3d 546, 555 (Tex. 2004). It is not enough that the act causing the harm be intentional—there must also be knowledge to a substantial certainty that the harm will occur. *City of Dallas v. Jennings,* 142 S.W.3d

310, 313-14 (Tex. 2004). A taking cannot rest on the mere negligence of the government. *City of Tyler v. Likes*, 962 S.W.2d 489, 505 (Tex. 1997). Smedley argued that Exhibits C and D, attached to his response, demonstrated that the City "intentionally ordered fill to brought [sic] and placed that significantly altered the grade and slope of the properties[,]" and "that these acts were not only intentional but that the [City] was aware that the raising of the ground level would affect drainage and damage to the property was certain to occur." Smedley further asserted that Exhibit D shows that the Stroll was made level with the Chicken Express parking lot instead of built to grade as called for in the design, and that Exhibit C shows that this was done at the direction of a member of the MDCs with "knowledge that doing so would cause issues with the drainage."

Exhibit C is a declaration of an individual who was a tenant on the Smedley Property during the construction of the Magnolia Stroll. The tenant stated in the declaration that, during the construction of the Stroll, she witnessed the construction company bring fill onto the property and she called "Johnny Williams[,]" who she alleged was a member of both of the MDCs, and told him she was worried that "all of this additional fill would affect the drainage on the property." According to the tenant, Williams told her that the fill would not affect the drainage. The tenant stated that prior to the fill being added, the water would drain down a path to a drainage ditch, and then to the road. In the City's Reply to Smedley's Response, the City objected to "all statements attributed to Williams" in Exhibit C as hearsay and objected to Exhibit D as unauthenticated photographs. Smedley also attached an Expert Witness Report by Norm Cooper, P.E. as Exhibit A to Smedley's Response, wherein Cooper concluded, "The referenced historic building was and continues to be severely damaged by rainwater impoundment under and around it. This impoundment was caused first by the dam effect of the 515 Magnolia Blvd[.] parking lot and next by the dam effect of City's 'Magnolia Stroll' walkway on the alley behind 511 and 515 Magnolia Blvd." The report stated that wet soil caused by impounded water had caused concrete block piers on the property to sink as much as six inches.

Exhibits C and D attached to Smedley's Response do not allege or portray the grade level of the easement prior to or at the time of the construction of the Stroll, nor do they provide legally sufficient evidence that the City was substantially certain that the construction of the Stroll would cause flooding to the Smedley Property. Our appellate record also includes letters from Smedley to the City in 2005 and 2006, complaining that the City issued building permits allowing Chicken Express to build up its lots next door to the Smedley Property, which, according to Smedley, resulted in rainwater not being diverted off but instead pooling up to six inches deep under his building. Based on this record, Smedley has failed to raise a fact issue that the City intentionally took or damaged his property for public use or that the City was substantially certain that the construction of the Stroll would result in the flooding of the Smedley Property. We reverse the trial court's judgment denying the City's Plea to the Jurisdiction or, Alternatively, Motion for Summary Judgment as to Smedley's takings claim. *See Jennings*, 142 S.W.3d at 313-15 (holding the trial court properly granted summary judgment in favor of the City of Dallas where plaintiff homeowners failed to present evidence that the City knew when it unclogged the sewer line that any flood damage would occur and failed to present evidence that the act of unclogging was

substantially certain to lead to such damage).

But for the additional language in the trial court's July 27, 2015 Order we would reverse and render a judgment in favor of the City as to all claims. Nevertheless, the trial court also included language in its order that granted Smedley fourteen days to amend his Petition to add ultra vires claims, if any, "for prospective relief (declaratory or injunctive relief to require compliance with statutory or constitutional provisions) against appropriate persons in their official capacity." *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009) (A suit asserting that a government officer "acted without legal authority" and seeking to compel the official "to comply with statutory or constitutional provisions" is an ultra vires suit not barred by governmental immunity because it "do[es] not attempt to exert control over the state."). There is no indication in the record now before us whether Smedley ever filed an amended petition following the entry of the trial court's orders of July 27, 2015. We remand the remaining part of Smedley's claim, if any, to the trial court to determine whether Smedley amended his Petition against the City as permitted by the July 27, 2015 Order.

AS TO THE CITY OF MAGNOLIA, AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.

AS TO THE CITY OF MAGNOLIA 4A ECONOMIC DEVELOPMENT CORPORATION AND CITY OF MAGNOLIA 4B COMMUNITY DEVELOPMENT CORPORATION, APPEAL DISMISSED.